396 A.2d 1202

COMMONWEALTH of Pennsylvania

v.

Mark Steven HENDERSON, Appellant.

Supreme Court of Pennsylvania.

Argued Nov. 14, 1978.

Decided Jan. 24, 1979.

346

John A. Mihalik, Hummel, James & Mihalik, Bloomsburg, for appellant.

Richard C. Brittain, Dist. Atty., William S. Kreisher, Asst. Dist. Atty., Danville, for appellee.

Before EAGEN, C. J., and ROBERTS, NIX, MANDERI-
NO and LARSEN, JJ.

## OPINION

NIX, Justice.

Appellant, Mark Henderson and two companions, Richard
Bowen and Charles Lanning, were travelling on Interstate
80 and registered at a Holiday Inn for lodging for the night.
In the cocktail lounge of the motor inn, appellant and his
friends first encountered the victim, Thad Vincent, Jr. La-
ter Vincent joined the three men in their room. Vincent is
alleged to have made certain homosexual advances to Bowen
which precipitated an altercation during which the victim
sustained fatal injuries. Appellant was tried for his partici-
pation in the incident and was found guilty of murder of the
second degree.[1] After the imposition of sentence this direct
appeal followed.

During the course of the police investigation of this case,
Charles Lanning was questioned on several occasions con-
cerning the events of the night in question and his state-
ments were tape recorded. He was called by the Common-
wealth at the trial of the appellant as the principal prosecu-
tion witness. Most of appellant's objections relate to the
trial court's rulings pertaining to these taped statements of
Lanning. We are of the view that one of these objections
has merit and requires the reversal of the judgment of
sentence and the grant of a new trial.

At the conclusion of the direct testimony of Lanning and
before the commencement of cross examination, defense
counsel requested all prior statements made to police offi-
cials by this witness. In response the defense was given the
tapes of Lanning's conversation and the court declared an
early adjournment for the day to afford the defense an
opportunity to study the material before beginning cross
examination of the witness. When the trial resumed the

---

1. This killing occurred on February 8, 1974 prior to the March 26,
1974 amendment to section 2502. *See* 18 Pa.C.S.A. § 2502(b).

defense requested that a transcript be made of one of the tapes.[2] The court then made the following ruling:

Defense motion is denied and it should further be noted that the tapes themselves were made available to the defendant and his counsel to listen to the tapes and to make any extracts therefrom. It should further be noted that the Court also listened to the tapes and found the same to be inaudible in many areas. It is, therefore, the conclusion of the Court, under these circumstances that to attempt at this time to transcribe the tapes would be impractical, if not impossible. Therefore, the Court further concluded that the *tapes themselves are the best evidence available to the defendant for these purposes.* (emphasis added).

Cross examination proceeded and was concluded during which defense counsel used information secured from these tapes as the basis for questions. Subsequently defense counsel sought permission to play for the jury a segment of the tape which it asserted contained a critical inconsistency with the witness' testimony given during the trial. It is the trial court's failure to grant this request that we deem to be error of such magnitude that the award of a new trial is necessitated.

The testimony of Lanning was essential to support the Commonwealth's theory that the appellant's assault inflicted the wounds that caused the death of the victim. At trial, one of the vigorously contested facts was whether appellant struck the victim with a beer bottle. The tape recording indicated that the witness did not see appellant strike the victim with the bottle; at trial, Lanning testified that he did see the appellant use the bottle to strike Vincent. This conflict had a significant bearing upon Lanning's description as to the nature of Henderson's assault upon the victim. If the testimony of Lanning in this regard had been discounted and the defense version of appellant's participation in the

2. It is to be noted that the defense did not claim that it had inadequate time, in view of the information supplied, to proceed at that point with cross examination.

encounter accepted, then the jury could have found that appellant's acts did not cause the death. Although defense counsel attempted to establish the prior inconsistency on cross examination, the witness did not acknowledge the prior inconsistency.

"Q. Didn't you tell the police you didn't see a beer bottle hit Mr. Vincent?

A. Not that I remember, no."

The court had previously ruled that the tapes themselves were the best evidence; thus the request of counsel to have this segment played for the jury was in accordance with that ruling. It is also clear that counsel's questioning with reference to the inconsistency was dependent upon the establishment that there was, in fact, an inconsistency. Under the trial court's guidelines this could only be demonstrated to the jury by the playing of the tape to establish the contradiction. While it may be true that the tapes were of poor quality, nevertheless the court in its opinion indicated that the tape in question clearly established the inconsistency. We therefore do not believe that the fact portions may have been inaudible should have prevented appellant the opportunity of presenting to the jury that segment which unequivocally established the earlier conflicting statement.[4]

We recognize the general principle that the admissibility of evidence is a matter within the discretion of the trial court. *Commonwealth v. Bartlett,* 446 Pa. 392, 288 A.2d 796 (1972). It is equally well accepted that where a witness has made a prior statement inconsistent with his trial testimony, the aggrieved party has a right to establish

4. Appellee argues that the tapes were not properly authenticated. In *Commonwealth v. Lopinson,* 427 Pa. 284, 308, 234 A.2d 552, 566 (1967), we indicated that a party seeking to introduce tape recordings has the responsibility to establish that they represent a true and correct reproduction of the statements made and that the voices are properly identified. However, this rule is not applicable where, as here, the objecting party is responsible for the making of the recordings and thus would be aware of any facts that would reflect upon the accuracy of the reproduction or the identity of the parties participating in the recorded conversations.

the inconsistency for purposes of impeachment. *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A.2d 552 (1967). A question to be resolved in this trial was whether the victim's death was the result of appellant's assault. At trial the Commonwealth relied principally upon the testimony of Lanning to place before the jury their version of the nature and the intensity of appellant's attack. The purported inconsistency would have contradicted a vital aspect of Lanning's testimony in this regard. The denial of the opportunity to effectively establish this inconsistency was a serious error which might well have affected the ultimate outcome of the trial.[5]

Judgment of sentence reversed and a new trial awarded.

O'BRIEN, J., did not participate in the decision of this case.

POMEROY, former J., did not participate in the consideration or decision of this case.

[5] The trial court suggested that the defense had the alternative of calling the police officers to whom the statements were made. We do not believe that the defense should have been required to rely upon Commonwealth witnesses and their recollection of a conversation where there was a recording of that conversation in existence.