449 A.2d 566

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James Vincent SANDUTCH, Appellee.**

Supreme Court of Pennsylvania.

Argued April 13, 1982.

Decided June 30, 1982.

Reargument Denied Sept. 2, 1982.

Joseph P. Giovannini, Jr., Asst. Dist. Atty., for appellant.

Michael D. Foglia, Norma Chase, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

LARSEN, Justice.

At approximately 2:30 a. m. on February 14, 1976, appellee James Vincent Sandutch, James Vincent Mastrota and Henry Mangum drove to the home of Luzerne County Deputy Sheriff Eugene Boyarski, where appellee and Mastrota threw a firebomb—a half-gallon milk bottle filled with gasoline—through a window, setting the house ablaze and killing Deputy and Mrs. Boyarski and their three children.

As a result of this incident, on November 5, 1976 appellee was convicted by a jury of five counts of murder of the second degree, one count of arson and one count of criminal conspiracy. Post-verdict motions were denied and appellee was sentenced to two consecutive and three concurrent terms of life imprisonment for murder, and a consecutive term of imprisonment of seven and one-half to fifteen years for arson; appellee's sentence on the conspiracy conviction was suspended.

A three-judge panel of the Superior Court reversed appellee's judgment of sentence and remanded the case for a new trial.[1] *Commonwealth v. Sandutch,* 269 Pa.Super. 481, 410

[1]. Appellee's direct appeal to this Court was placed on the Special Transfer Docket and transferred to the Superior Court. The Superior Court panel members were Justice Robert N. C. Nix, Jr. of the

A.2d 358 (1979). We granted the Commonwealth's petition for allowance of appeal.

The Commonwealth's contention on this appeal is that the trial court was correct in excluding from evidence both a tape recording allegedly made by James Vincent Mastrota and verified pretrial applications filed by Mastrota in his own case, and that the three-judge panel erred in concluding to the contrary. We agree.

The facts leading up to these disputed evidentiary rulings are as follows. On May 18, 1976, Mastrota testified at appellee's preliminary hearing and implicated both himself and appellee in a premeditated plan to firebomb the home of Deputy Boyarski. When Mastrota refused to testify at appellee's trial on the grounds that any such testimony would incriminate him, the Commonwealth was permitted to play for the jury a tape recording of Mastrota's testimony at the preliminary hearing.

After the Commonwealth had completed the presentation of its case, appellee attempted to play for the jury a second tape, allegedly made by Mastrota.[2] According to appellee's offer of proof at trial, "the content of the tape is a complete, unequivocal repudiation of any incriminating evidence that he [Mastrota] previously supplied anyone, and it contains statements made, we contend, by James Mastrota." Appellee sought to play the tape "solely for the purpose of attacking the tape recording testimony introduced into evidence by the Commonwealth . . . . "

Appellee also sought to impeach the credibility of Mastrota's preliminary hearing testimony by attempting to introduce into evidence verified pretrial applications filed by Mastrota in his own case. According to appellee's offer of proof, these applications were to be offered as evidence

Supreme Court, Judge Donald Wieand of the Superior Court, and Judge I. Martin Wekselman of the Allegheny County Court of Common Pleas.

2. This tape mysteriously appeared in appellee's son's mailbox on September 1, 1976, three and one-half months after appellee's preliminary hearing.

"that the statements he [Mastrota] has previously made [at the preliminary hearing] were made under duress, under coercion, under threats or promises."

The trial court correctly refused to admit both the tape and the pretrial applications into evidence. We have held that "our common law permits the admission of an unavailable witness' prior recorded testimony from a preliminary hearing, provided the defendant had counsel and a full opportunity to cross-examine the witness during the earlier proceeding." *Commonwealth v. Scarborough*, 491 Pa. 300, 317, 421 A.2d 147, 155 (1980). "A witness who invokes the privilege against self-incrimination is 'unavailable' for purposes of the hearsay exception permitting the introduction of the notes of his testimony from a prior judicial proceeding." *Commonwealth v. Rodgers*, 472 Pa. 435, 452, 372 A.2d 771, 779 (1977) (plurality opinion). The tape of Mastrota's preliminary hearing testimony was thus admissible against appellee precisely because appellee had counsel and an opportunity, which he in fact exercised, to cross-examine Mastrota at that hearing.

If we were to permit appellee to impeach an unavailable coconspirator's prior testimony through the admission of subsequently created tapes and pretrial applications, we would open the door to every coconspirator to claim in a letter, tape or pretrial application that his prior testimony was false or coerced. This would deprive the opposing party of any opportunity to rehabilitate its witness and make a mockery of the truth-seeking purpose of trial. The trial would thus become a contest of hearsay tapes, memoranda and legal pleadings, none of which were ever subject to cross-examination. This we will not allow.

The order of the Superior Court is reversed and the case is transferred to the Superior Court for further proceedings.[3]

3. Appellee raised four issues in his direct appeal. The three-judge panel found a single issue to be dispositive of the entire appeal; the three remaining issues presented were, therefore, never addressed by the panel. In view of our disposition of this appeal, we are transfer-

ROBERTS, J., filed a concurring opinion in which O'BRIEN, C. J., joined.

FLAHERTY, J., filed a dissenting opinion.

NIX, J., did not participate in the consideration or decision of this case.

ROBERTS, J., concurring.

It is a fundamental principle of evidence that trial testimony is always subject to impeachment by the opposing party, whether that testimony is presented through a prior recorded statement or by having the witness take the stand. This principle is well stated in the opinion of Mr. Justice Flaherty dissenting from the opinion announcing the judgment of the Court and applies with special force to this case, where impeachment evidence which appellee sought to use at trial was not even available at the time of the preliminary hearing.

Nonetheless, on this record it is clear that the evidence sought to be admitted for the purpose of impeachment was properly excluded. To establish the admissibility of the prior tape-recorded statement, appellee was obliged to authenticate it. *Commonwealth v. Bolish,* 381 Pa. 500, 113 A.2d 464 (1955). See *Commonwealth v. Johnson,* 450 Pa. 575, 301 A.2d 632 (1973); *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A.2d 552 (1967). See also *Commonwealth v. Henderson,* 483 Pa. 345, 396 A.2d 1202 (1979). See generally McCormick, Handbook of the Law of Evidence § 218 et seq. (Cleary, ed. 1972).

Here, appellee's offer of authentication was merely that the tape recording had "mysteriously" been found in the mailbox of appellee's son in an unpostmarked, unstamped package addressed to "J. S. Jr.," that the tape recording had remained with family members until the time of trial, and that Mrs. Mastrota had identified the voice on the tape recording as that of James Mastrota, her husband. Appellee

ring this case to the Superior Court for further proceedings on the three remaining issues.

could establish neither the circumstances in which the challenged tape recording had been made nor a chain of custody covering the period from the time the tape recording had been made until it came into the possession of the Sandutch family. In these circumstances, the trial court acted properly in ruling the tape recording inadmissible.

The trial court's denial of appellee's request to use James Mastrota's pretrial suppression motion application was also clearly a proper exercise of the trial court's discretion. In denying the request, the trial court permitted appellee to introduce the testimony that Mastrota had given at the suppression hearing—far more probative evidence than the excluded application. Manifestly, appellee has no legitimate basis for complaint.

As the evidence at issue was properly deemed to be inadmissible impeachment evidence, I concur in the result.

O'BRIEN, C. J., joins in this concurring opinion.

FLAHERTY, Justice, dissenting.

I dissent. Although admission of Mastrota's pre-trial hearing testimony was proper under *Commonwealth v. Rodgers*, 472 Pa. 435, 453, 372 A.2d 771, 779 (1977) (plurality opinion), appellee should not have been foreclosed, at trial, from impeaching that testimony. The fact that appellee had an opportunity to cross-examine Mastrota at the preliminary hearing did not warrant denial of the opportunity to impeach when, as a result of his refusal to testify at appellee's trial, Mastrota's preliminary hearing testimony was admitted.

The motive to conduct cross-examination and to impeach at the preliminary hearing is not identical with the motive to do the same at trial, for there is a significant difference in the interests at stake in the two stages, in that a defendant's guilt is not being determined at the preliminary hearing. As Mr. Justice Manderino stated, dissenting in *Commonwealth v. Velasquez*, 449 Pa. 599, 606–607, 296 A.2d 768, 772 (1972):

"[A]lthough the opportunity to cross-examine is the same in the present proceeding as in the earlier proceeding, the exercise by counsel of the *opportunity to cross-examine* may not be the same because the potential consequences of the actions to the defendant are vastly different. Motivation for human conduct is at all times determined by that which is at stake. The loss of a peppercorn is not the loss of liberty—and the loss of liberty is not the loss of life."

(Emphasis in original).

In addition, there may be tactical reasons for not engaging in thorough impeachment prior to trial, due to the *expectation* of being able to impeach the witness at trial. The witness' refusal to testify at trial, however, frustrates that expectation and should not result in prior testimony being admitted without being subjected to an opportunity for fully motivated impeachment.