481 A.2d 632

**COMMONWEALTH of Pennsylvania**

v.

**Norval "Happy" DeMARCO, Appellant.**

Superior Court of Pennsylvania.

Argued April 5, 1984.

Filed July 27, 1984.

Petition for Allowance of Appeal Denied Jan. 7, 1985.

318

John W. Murtagh, Jr., Pittsburgh, for appellant.

Katherene E. Holtzinger, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before WICKERSHAM, OLSZEWSKI and HOFFMAN, JJ.

OLSZEWSKI, Judge:

This matter comes before this court on appeal from the judgment of sentence of April 19, 1983 by the Court of Common Pleas of Dauphin County. Following a jury verdict finding appellant guilty of theft by deception, the court below, in a modified sentence, ordered that the appellant serve a term of incarceration of ten to twenty-three months, imposed costs, a fine of five hundred dollars and directed that restitution be made in the amount of twenty-four hundred dollars. Timely post-trial motions were denied and this appeal followed.

On June 4, 1980, Mrs. Edith Shepler withdrew twenty-four hundred dollars from her savings account and handed it to a man who purported to be a bank examiner. Mr. William Conn, Vice-President and Security Officer of the bank, suspicious of the large withdrawal by a senior citizen, observed two men in the vicinity of the bank and contacted the police.

Detective James N. Negley, of the Derry Township Police Department, used eyewitness descriptions of the two men and an automobile license number to trace the perpetrators to Canada. After Shepler and Conn separately identified the appellant from a photographic array, a complaint was filed charging him with theft by deception and criminal conspiracy, on August 4, 1980. Three days later, the Derry Township Police Department initiated extradition proceedings against the appellant, culminating in an arrest on April 21, 1982, in Canada.

On May 18, 1982, the Commonwealth withdrew its first complaint and filed a second complaint which corrected a misspelling of the appellant's name and charged only theft by deception.

After a hearing in Canada, the appellant was extradited to the United States, and was tried on November 16, 1982. Following a jury verdict of guilty and a denial of timely post-trial motions, this appeal was filed.

Seven issues are raised in this appeal. The appellant first argues that the Commonwealth denied him his right to a speedy trial under Pa.R.Crim.P., Rule 1100, 42 Pa.C.S.A., which states in pertinent part:

(a)(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

. . . . .

(d) In determining the period for commencement of trial, there shall be excluded therefrom:

(3) such period of delay at any stage of the proceedings as results from:

(i) the unavailability of the defendant. . . .

The appellant alleges that he was not "unavailable for trial" during the period from the date the first complaint was filed, August 4, 1980, to the date of trial, November 16, 1982. We disagree, and hold that the appellant's right to a speedy trial was not violated.

A recitation of the key events in the history of this case is necessary:

| | |
|---|---|
| June 4, 1980 | Criminal offense occurs. |
| August 4, 1980 | Complaint filed charging Norwall "Happy" DeMarco with theft by deception and criminal conspiracy. |
| August 7, 1980 | Canadian police advise Commonwealth to send extradition materials directly to Peel Regional Police Department, Ontario, Canada. |
| September 30, 1980 to February 5, 1981 | Commonwealth sends documents to Canadian authorities, who request two separate amendments of the materials. |
| January 1, 1981 | [One hundred eighty days have passed from filing of complaint.] |
| February 5, 1981 | Commonwealth inquires into status of extradition and is advised of delay due to backlog in Canadian work program. |

| | |
|---|---|
| March 2, 1981 | Commonwealth receives copy of letter from Canadian police to U.S. Consulate in Toronto, advising that warrant had been issued for arrest of the appellant. |
| March 17, 1981 | U.S. Department of State contacts Commonwealth with request for information concerning the extradition. Commonwealth requests of Canada that arrest be delayed pending application with the U.S. Department of Justice. |
| March 19 to early April, 1981 | Commonwealth prepares and sends documents to Washington, D.C. |
| March 26, 1981 | Commonwealth contacts Canadian authorities to determine status of extradition process. |
| June 8, 1981 to August 14, 1981 | Commonwealth submits amended documents to Washington, D.C. |
| February, 1982 | Commonwealth contacts U.S. Department of Justice to determine status of extradition process. Problems relating to misspelling of the appellant's name and to evidence charging a co-conspirator are communicated to the Commonwealth. Commonwealth suggests withdrawal of first complaint and filing of second, corrected complaint. |
| May 18, 1982 | Original complaint withdrawn from District Justice William Rathfon, second complaint filed charging Norwall "Happy" DeMarco with theft by deception. |
| June 15, 16, 18, 1982 | Following a contested extradition hearing in Canada, the appellant is ordered extradited. |
| August 11, 1982 | Commonwealth returns the appellant to Pennsylvania to stand trial. |
| November 16, 17, 1982 | After trial by jury, the appellant is found guilty of theft by deception.[1] |

Our review of the chronologue compels the conclusion that the one hundred eighty day limitation prescribed by Rule 1100 was tolled by the unavailability of the appellant from August 4, 1980 until August 11, 1982. "The defendant should be deemed unavailable for the period of time

1. A more detailed chronology of the case history appears at *Commonwealth v. DeMarco*, No. 1665 C.D., slip op. pp. 4–9 (Court of Common Pleas of Dauphin County 1982). Note that the appellant stipulates the occasion of the extradition hearing in his statement of facts. Appellant's brief at 8. Under Pa.R.Crim.P. Rule 1100(d)(3)(i), 42 Pa.C.S.A., these three days are automatically excluded from the running of the statute, bringing the trial within one hundred eighty days of the filing of the second complaint.

during which he contested extradition, or a responding jurisdiction delayed or refused to grant extradition." Pa.R. Crim.P., Rule 1100 Official Comment, 42 Pa.C.S.A.

 Although Pennsylvania case law does not discuss the application of Rule 1100 to extradition proceedings with foreign countries, the case law discussion of extradition from foreign states is instructive.[2] It is generally held that Rule 1100 is tolled where the Commonwealth shows, by a preponderance of the evidence, that it has acted with due diligence in seeking extradition to bring the defendant to trial. *Commonwealth v. Polsky*, 493 Pa. 402, 426 A.2d 610 (1981); *Commonwealth v. Clark*, 256 Pa.Super. 456, 390 A.2d 192 (1978). Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been made to secure the defendant's attendance at trial. *Id.; see also Commonwealth v. Johnson*, 305 Pa.Super. 310, 451 A.2d 546 (1982). The matters of availability and due diligence "must be judged by what *was* done by the authorities rather than [by] what was not done." *Commonwealth v. Williams*, 284 Pa.Super. 125, at 132, 425 A.2d 451, at 455 (1981) (emphasis in original, citation omitted); *see also Commonwealth v. Williams*, 317 Pa.Super. 456, 464 A.2d 411 (1983) (reasonableness under the circumstances); *Commonwealth v. Singleton*, 313 Pa.Super. 224, 459 A.2d 821 (1983) (every step that Commonwealth could reasonably be expected to take); *Commonwealth v. Fanelli*, 292 Pa.Super. 100, 436 A.2d 1024 (1981) (Commonwealth does not have to exhaust every conceivable avenue open to it).

In the instant case the Commonwealth initiated extradition proceedings within three days of filing its complaint against the appellant. This prompt procedure distinguishes the case from *Commonwealth v. Kovacs*, 250 Pa.Super. 66, 378 A.2d 455 (1977), in which due diligence was found lacking when the Commonwealth failed to *initiate* extradition proceedings for more than one hundred eighty days. The record here reveals that the Commonwealth diligently

2. *See* 42 Pa.C.S.A. § 9121, Uniform Criminal Extradition Act.

pursued the matter first with the Peel Regional Police Department and eventually with the United States Department of State and Department of Justice. Every time that a modification or additional documentation was requested, the Commonwealth promptly complied.

The delay in the instant case was due, in part, to the extradition procedure which the Commonwealth chose to pursue. Initially, the Commonwealth applied directly to the Canadian authorities. As the Director of the Criminal Investigation Division, Dauphin County District Attorney's Office, testified, his office had conducted one prior successful extradition proceeding with Canadian authorities.[3] His reliance on that past successful proceeding was reinforced by the recommendation of the Canadian authorities that all documentation be sent directly to Canada. The Director explained that, in fact, the documents should have been sent to the United States Department of State for processing through diplomatic channels.[4]

This scenario raises a novel question: whether due diligence may be found where the Commonwealth, in reliance upon past experience and the representations of officers of the foreign jurisdiction, pursues an international extradition

---

**3.** The detective had conducted this one extradition with a foreign country in eight years of supervising extradition matters for the county. (N.T. 84).

**4.** *Treaty on Extradition,* December 3, 1971, United States-Canada, 27 U.S.T. 985, T.I.A.S. 8237:

ARTICLE 9

(1) *The request for extradition shall be made through the diplomatic channel.*

(2) The request shall be accompanied by a description of the person sought, a statement of the facts of the case, the text of the laws of the requesting State describing the offense and prescribing the punishment for the offense, and a statement of the law relating to the limitation of the legal proceedings.

(3) When the request relates to a person who has not yet been convicted, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting State and by such evidence as, according to the laws of the requested State, would justify his arrest and committal for trial if the offense had been committed there, including evidence proving the person requested is the person to whom the warrant of arrest refers. *Id.* Article 9 (emphasis added).

through improper channels. Stated another way, we must consider whether the appellant's right to a speedy trial imposes a duty on the Commonwealth to correctly initiate its extradition process with a foreign nation.

A primary purpose of Rule 1100 is to prevent prejudice to the appellant in the preparation of his defense. *See Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972); Pa.R.Crim.P., Rule 1100 Official Comment, 42 Pa.C. S.A. In the instant case, the appellant alleges that the delay in prosecution impaired his ability to present an alibi defense as to his presence in his stockbroker's office on the day of the offense.[5] Nevertheless, we are persuaded that "common sense, the public interest, and justice demand that a defendant not be permitted the windfall of an absolute dismissal under Rule 1100." *Commonwealth v. Polsky,* 493 Pa. 402, at 407, 426 A.2d 610, at 613 (1981).

Due diligence is a concept defined on a case by case basis. It has been found where the Commonwealth relies on statements by officers of the responding jurisdiction that they will apprise the Commonwealth of progress in an extradition proceeding. *Commonwealth v. Johnson, supra; see also Commonwealth v. Warman,* 260 Pa.Super. 130, 393 A.2d 1046 (1978) (Commonwealth had no further

5. Q Mr. Greco, in the spring of 1980, May, June and July, it was a hectic time in the market?
A Very much so.
Q So much so that you have no specific recollection of that day in and of itself, is that right?
A Right.

 . . . . .

Q Do you recall specifically, sir, whether Mr. DeMarco was in your office that day or not?
A No, I can't recollect.
Q On a routine basis did he come in and watch the stock ticker?
A During those hectic days Mr. DeMarco and his son were in there practically every day.
Q But you have no specific recollection of any single day, is that right?
A Well, not really. First of all, it was two years ago and secondly things were so hectic in those days that I didn't know, it was just a very hectic time....
(N.T. 232–233).

duty to monitor defendant's availability). The imposition of a duty to monitor the responding jurisdiction's procedure is viewed as an unduly harsh burden. *Commonwealth v. Emmett*, 274 Pa.Super. 23, 417 A.2d 1232 (1979).

■ *Johnson, Warman* and *Emmett* hold that due diligence is established by a justifiable reliance on the statements of a responding jurisdiction once the extradition process has been properly set in motion. In the instant case, due diligence has been proved where the Commonwealth has relied on prior successful international extradition experience, and it has followed the procedure suggested by Canada, the responding jurisdiction.[6]

■ Finally, as to the six month period of inactivity, between August 14, 1981 and February of 1982, we agree with the court below that the Commonwealth justifiably believed that it had pursued the extradition to the full extent of its power, and that there was nothing further to do pending notification from the U.S. Department of State and the Canadian authorities.

■ The appellant was unavailable for trial until his return to the United States on August 11, 1982. His trial, on November 16, 1982, was well within one hundred eighty days of the date on which he became available, and the appellant's rights under Rule 1100 were not violated.

## WITHDRAWAL OF INITIAL COMPLAINT—FILING OF NEW CHARGES

The appellant next argues that the complaint filed on August 4, 1980 was improperly dismissed and that a therefore invalid second complaint was filed on May 15, 1982. This argument lacks merit.

**6.** *Compare Commonwealth v. Minnich*, 324 Pa.Super. 339, 343, 471 A.2d 869, 871 (1984), in which this court held that error due to a Commonwealth criminologist's inaccurate work may not excuse delay under Rule 1100(c), and that the Commonwealth there failed to meet its burden of establishing "due diligence." We distinguish the instant case on the basis that the Commonwealth was relying on the misrepresentations of foreign authorities not under Commonwealth supervision.

The appellant's argument is premised upon a misapprehension of the applicable section of the Pennsylvania Rules of Criminal Procedure.[7] In 1980, at the time of the offense, Pa.R.Crim.P., Rule 150, 42 Pa.C.S.A., "Defects in Complaint, Citation, Summons or Warrant," stated:

(b) Substantive Defects:

A complaint ... contains [sic] a substantive defect, the defendant shall be discharged unless he waives the defect. Nothing in this rule shall prevent the filing of a new complaint ... and the issuance of process in which the defect is corrected in a proper matter.

*Id.*, as amended September 18, 1973, effective January 1, 1974.[8]

■ The appellant alleges that the complaint was withdrawn and refiled to avoid dismissal under Rule 1100. Insofar as we hold that the appellant was unavailable for trial from August 4, 1980 until August 11, 1982 (see pages 635–638 *supra*), the appellant's right to a speedy trial was not violated by either complaint.

The record demonstrates that the initial complaint contained substantive defects requiring correction. The Commonwealth withdrew that complaint in the midst of protracted extradition proceedings to correct a misspelling of the appellant's name and to drop a charge of conspiracy.[9] Both corrections were in response to problems raised by the U.S. Department of State and were intended to expedite the appellant's extradition. Both corrections were necessary to remedy substantive defects in the original complaint. See Pa.R.Crim.P., Rule 150, 42 Pa.C.S.A., Note (as amended September 18, 1973); *see also Commonwealth v. Brocklehurst*, 266 Pa.Super. 335, 404 A.2d 1317 (1980), *aff'd*, 491

7. The appellant cites to Pa.R.Crim.P., Rule 151, 42 Pa.C.S.A., Withdrawal of Prosecution.

8. Rule 150 was subsequently amended April 8, 1982, effective July 1, 1982.

9. The appellant was initially charged with conspiring with Gordon W. Mackie, a Canadian resident. Withdrawal of the first complaint effected a withdrawal of all charges against Mackie. (N.T. 113).

Pa. 151, 420 A.2d 385 (1980) (incorrect middle name in complaint held substantive defect); *Commonwealth v. Navarro*, 276 Pa.Super.153, 419 A.2d 141 (1980), *aff'd*, 499 Pa. 279, 453 A.2d 308 (1982) (failure to make out prima facie case). Finally, although Rule 150, at that time, contained no procedural requirements, we note that the first complaint was properly dismissed by a competent judicial authority.[10] We find no evidence of any attempt by the Commonwealth to evade the strictures of Rule 1100. *Commonwealth v. Mumich*, 239 Pa.Super. 209, 361 A.2d 359 91976); *Commonwealth v. Brennan*, 264 Pa.Super. 206, 399 A.2d 739 (1979).[11]

## APPELLANT'S MOTION TO DISMISS
## PURSUANT TO RULE 315

■ The appellant next questions whether the court below abused its discretion in refusing to dismiss the case pursuant to Pa.R.Crim.P., Rule 315, 42 Pa.C.S.A., Motion for Dismissal. We hold that the information in the instant case was filed within a reasonable time and that the court below properly denied the motion to dismiss.

The appellant's preliminary hearing was held on August 23, 1982 and the information was filed on October 1, 1982. (Reproduced Record at 1(a)). The appellant asserts that the information should have been filed prior to the preliminary hearing pursuant to Pa.R.Crim.P., Rule 231, 42 Pa.C.S.a. The official comment to Rule 231 states that the bypass procedure should be used only in extraordinary circumstances.

The standard procedure, set forth in Pa.R.Crim.P., Rule 225, Pa.C.S.A., calls for the filing of an information after the preliminary hearing. As already discussed, Rule 1100 did not require the Commonwealth to proceed under Rule 231, nor did the extradition procedures require filing of the

**10.** The first complaint was dismissed and the second complaint filed before District Justice William P. Rathfon. (N.T. 24).

**11.** *Compare Commonwealth v. Braithwaite*, 253 Pa.Super. 447, 385 A.2d 423 (1978) (Spaeth and Hoffman, JJ., dissenting) (proof of prosecutional motive irrelevant).

information by other than Rule 225.[12] The court below properly dismissed the issue.

## ADMISSION OF IDENTIFICATION TESTIMONY

The appellant next asserts that the court below erred in refusing to suppress the identification testimony of the Commonwealth's chief eyewitnesses, Mrs. Shepler and Mr. Conn. We agree with the court below and hold that any improper suggestion in the pre-trial identifications was purged by proof of an independent basis for the in-court identifications.

The appellant alleges that the two photographic array identifications and an in-person line-up identification were unnecessarily suggestive.[13] We agree with the court below that the Commonwealth proved these pre-trial identifications were valid. Lower Court opinion at 11.

Assuming, *arguendo*, that any of the pre-trial identifications were the result of impermissibly suggestive influences, the in-court identifications may still be admissible. *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978). "It is the likelihood of misidentification which violates defendant's right to due process, and it is this which is the basis of the exclusion of evidence." *Commonwealth v. Ransome*, 485 Pa. 490, at 495, 402 A.2d 1379, at 1382 (1979) (citation omitted). The Commonwealth must prove the existence of an independent basis for the reliability of the identification by clear and convincing evidence. *Commonwealth v. Lavelle*, 277 Pa.Super. 518, 419 A.2d 1269 (1980).[14] A court must consider the following factors in evaluating the likelihood of misidentification: the witness' opportunity to view the criminal at the time of the

12. We note that the extradition was successfully processed without a statement concerning Rule 1100, although the *Treaty on Extradition*, Article 9(2), calls for such a statement.

13. See Appellant's brief, pages 23–25, for specific allegations of impermissible suggestion.

14. *See also Commonwealth v. Bey*, 249 Pa.Super. 185, 375 A.2d 1304 (1977) (Hoffman, J., concurring and dissenting).

crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; the length of time between the crime and the confrontation. *Commonwealth v. Slaughter, supra* (quoting *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ Both witnesses observed the appellant for an extended time in broad daylight. Mr. Conn, as Vice-President of Security at the bank, took special care to memorize the appellant's features. Both witnesses testified that their attentions were fully fixed on the appellant. Their descriptions to the police were similar and both fit the appellant. Mr. Conn remained steadfast in his identification throughout the proceedings. Mrs. Shepler, although demonstrating some uncertainty at the preliminary hearing,[15] identified the appellant with certainty throughout all other stages of the proceedings.[16] In light of the factors enumerated by *Slaughter,* we find that the court below correctly admitted the in-court identifications.

## SEATING OF THE TWELFTH JUROR

The appellant next contends that the court below erred in refusing to sustain his objection to the seating of the twelfth juror. We hold that the juror was correctly selected.

Pursuant to Pa.R.Crim.P., Rule 1106(e)(2), 42 Pa.C.S.A., the court below conducted a collective voir dire of the jury array. The appellant did not object to the selection of this procedure until counsel had exhausted his peremptory challenges and had learned the identity of the prospective twelfth juror. The appellant asserts that the failure of the court to supply him with a roster of jurors, detailing the

15. The appellant wore a different hairstyle, glasses and different attire at the preliminary hearing. (N.T. 74).

16. *See Commonwealth v. Silver,* 499 Pa. 228, 452 A.2d 1328 (1982); *Commonwealth v. Zabala,* 303 Pa.Super. 72, 449 A.2d 583 (1982) (that witness could not identify defendant in pre-trial process was relevant only to weight and credibility of testimony).

order in which alternates were to be selected, resulted in an unfair selection process.

 We note initially that the appellant has not alleged any material prejudice arising from the selection process. Nor does the appellant argue that the process failed to conform to Rule 1106(e)(2). We agree with the court below that the purpose of voir dire is not to provide counsel with the basis for exercising peremptory challenges, but is limited to the determination of whether a juror is subject to being challenged for cause, for lack of qualification, or for holding a fixed opinion or bias. *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977); *see also Commonwealth v. Stago*, 267 Pa.Super. 90, 406 A.2d 533 (1979). The appellant has not shown that the selection process failed to secure a competent, fair, impartial and unprejudiced jury. *Commonwealth v. McGrew*, 375 Pa. 518, 100 A.2d 467 (1953). The court below did not abuse its discretion in denying the appellant's motion.

## REFUSAL TO PERMIT TRANSCRIPT OF EXTRADITION HEARING TO BE READ INTO RECORD

The appellant next argues that the court below erred in denying his motion to read the transcript from the Canadian extradition hearing into the record.[17] We hold that the lower court committed no error in refusing the motion.

 The appellant chose to exercise his right not to take the stand, thereby making himself unavailable for cross-examination. *Commonwealth v. Sandutch*, 498 Pa. 536, 449 A.2d 566 (1982). To allow the transcript to be read to the jury would have denied the Commonwealth an opportunity to cross-examine the appellant, notwithstanding the adversarial nature of the Canadian extradition proceeding. The issue presented to the Canadian authorities was wheth-

17. The transcript had been admitted into evidence pertaining to appellant's argument under Rule 1100 (N.T. 283). The material which the appellant wished to have read was a transcript of his testimony at the extradition hearing in Canada. (N.T. 282).

er sufficient evidence had been adduced as would justify the appellant's arrest and commitment for trial under Canadian law.[18] In contrast, at trial the Commonwealth had the burden of proving the appellant's guilt of theft by deception beyond a reasonable doubt under Pennsylvania law. For prior testimony to be admissible, the issue must remain the same in both proceedings. This requirement ensures that an opposing party had an adequate motive for testing the credibility of that testimony. *Commonwealth v. Velasquez*, 449 Pa. 599, 296 A.2d 768 (1972). The interests of the Canadian authorities, in a hearing to determine whether to extradite a Canadian resident, were substantially different from the interests of the Commonwealth. Admission of the testimony would have denied the Commonwealth its opportunity to cross-examine the appellant. "It is a fundamental principle of evidence that trial testimony is always subject to impeachment by the opposing party...." *Commonwealth v. Sandutch* 498 Pa. at 541, 449 A.2d at 568 (Roberts, J., concurring). The appellant wished to introduce his extradition testimony to bolster his alibi defense, but to shield that testimony from cross-examination by the Commonwealth. The court below correctly denied the motion.[19]

## CHARGE TO THE JURY

■ Finally the appellant contends that the court below erred in refusing to give the appellant's requested charge or eyewitness testimony. We find that the appellant failed to preserve this issue for our review for want of a timely objection to the charge. Pa.R.Crim.P., Rule 1119(b), 42 Pa.C.S.A.; *Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747 (1977).

Affirmed.

18. *Treaty on Extradition*, Art. 9.

19. The appellant's reliance on *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), is misplaced. The Supreme Court there held that a state statute allowing the admission of a witness' prior inconsistent statement did not violate the defendant's right of confrontation under the VIth Amendment, where the witness was available to explain or deny the prior statement.