COMMONWEALTH of Pennsylvania,
Appellee

v.

Corey Richard HORNE, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

Corey Richard Horne, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

Corey Richard Horne, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 13, 2014.

Filed March 28, 2014.

Thomas W. Gregory, Jr., York, for appellant.

Stephanie E. Lombardo, Assistant District Attorney, York, for Commonwealth, appellee.

BEFORE: LAZARUS, J., OTT, J., and JENKINS, J.

OPINION BY LAZARUS, J.

Corey Richard Horne ("Horne") appeals the judgments of sentence imposed by the York County Court of Common Pleas at dockets CP–67–CR–702–2011, 703–2011, 704–2011, and 706–2011.[1] After careful review, we affirm.

This court previously set forth the underlying facts of this case as follows:

Charges were filed against Horne arising from a string of bank robberies that occurred between April 17 and May 11, 2009 in York County. A warrant for Horne's arrest was issued on May 21, 2009. Eventually, York County authorities determined that Horne was incar-

---

1. Horne also appeals the order entered by the court denying his motion to dismiss the charges against him due to a violation of the Interstate Agreement on Detainers ("IAD"). 42 Pa.C.S. §§ 9101–9108. This order became final and, subsequently, appealable once Horne's judgment of sentence was imposed. Accordingly, we will review the order as well.

cerated in Maryland pursuant to a Maryland conviction.

Due to a series of paperwork issues, York County's request for extradition under the IAD was not granted, and Horne was transferred to Franklin County, Pennsylvania, to face charges in that jurisdiction. Eventually, the paperwork issue was resolved, enabling Horne to be transferred directly to York County after the resolution of his charges in Franklin County. Horne was ultimately sentenced on December 22, 2010, on the Franklin County charges and on the same date was released to York County's custody. On February 3, 2011, Magisterial District Judge Barry L. Bloss, Jr., bound Horne for trial on the charges for the June 2011 trial term. The Commonwealth, concerned with compliance with the IAD, accelerated the timeline and called the case for trial on April 13, 2011. Prior to trial, Horne raised the issue of compliance with the time limitations imposed by Article IV(c) of the IAD. Without a hearing, the trial court found that these provisions of the IAD had been violated and dismissed the York County charges against Horne. *Commonwealth v. Horne*, 683 No. MDA 2011, unpublished memorandum at 1–2 (Pa.Super. filed February 14, 2012).

The Commonwealth appealed the court's dismissal of the charges, and this Court reversed the lower court's ruling and remanded for further proceedings on February 14, 2012. On March 19, 2012, a hearing on the issue of timeliness under the IAD took place. On March 23, 2012, the lower court denied Horne's motion to dismiss the charges against him due to a violation of the IAD, concluding that 111

days had elapsed and the Commonwealth had nine days in which to try Horne. *See* Opinion in Support of Order Denying Defendant's Motion, 3/23/12. The Commonwealth requested a continuance that same day, which the trial court granted.

Trial in case 702–2011 began on April 9, 2012. The jury returned a guilty verdict on two counts of robbery,[2] one count of theft,[3] and one count of receiving stolen property.[4] Trial in case 703–2011 commenced on April 2, 2012. At its conclusion, the jury returned a verdict of guilty of robbery, theft by unlawful taking, and receiving stolen property. Trial in case 704–2011 began on May 14, 2012, and the jury returned with a verdict of guilty on two counts of robbery. Trial in case 706–2011 commenced on May 7, 2012, and the jury found Horne guilty on three counts of robbery. The court sentenced Horne to an aggregate term of 16 to 45 years' incarceration. This timely appeal followed.[5]

Horne presents the following issues for our review:

1. Did the lower court err in finding that the [IAD] was not violated as the Commonwealth failed to bring [Horne] to trial within 120 days?

2. Did the lower court err in not ruling that the cases against [Horne] should have been dismissed pursuant to Pa.R.Crim.P. 600?

3. Did the lower court err in permitting the testimony of Justin Bishop and Sarah Francis?

4. Was the verdict of the jury against the weight of the evidence?

Brief of Appellant, at 5.

Horne first argues that the trial court erred in denying his motion to dismiss the

---

**2.** 18 Pa.C.S. § 3701(a)(1)(iv) & (v).

**3.** 18 Pa.C.S. § 3921(a).

**4.** 18 Pa.C.S. § 3925(a).

**5.** On March 12, 2013, this Court dismissed Horne's appeal due to his failure to file a brief. However, Horne filed an application to reinstate his appeal, which we granted on April 3, 2013.

charges against him due to a violation of the IAD. Horne asserts that the court erred when it did not include the time Horne spent in Franklin County in its calculation of the IAD time restriction and that York County did not exercise due diligence in obtaining custody of Horne. We disagree.

■ The IAD is a compact among 48 states, the District of Columbia and the United States. *Cuyler v. Adams,* 449 U.S. 433, 436 n. 1, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).[6] The IAD establishes procedures for the transfer of prisoners incarcerated in one jurisdiction (the "sending state") to the temporary custody of another jurisdiction (the "receiving state"), which has lodged a detainer against them. *Commonwealth v. Williams,* 586 Pa. 553, 896 A.2d 523, 536 n. 5 (2006). "The policy of the [IAD] is to encourage the expeditious and orderly disposition of charges and its purpose is to promote and foster prisoner treatment and rehabilitation programs by eliminating uncertainties which accompany the filing of detainers." *Commonwealth v. Merlo,* 242 Pa.Super. 517, 364 A.2d 391, 394 (1976) (citations, quotation marks and italics omitted).

■ Because the Commonwealth made the request for Horne's transfer to Pennsylvania, this case falls under Article IV of the IAD, which provides the procedure by which the prosecutor in the requesting state initiates the transfer:

> (a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary

custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated.

\* \* \*

> (c) In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

42 Pa.C.S. § 9101, Article IV(a), (c). Article VI of the IAD provides for calculating the 120–day time limit.

> (a) In determining the duration and expiration dates of the time period provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

42 Pa.C.S. § 9101, Article VI(a). Where a defendant is unavailable for trial and the District Attorney exercises due diligence in seeking custody of the defendant, the time where the defendant is unavailable is to be excluded in an IAD calculation. *Williams,* 896 A.2d at 536–37. In determining whether the prosecution has exercised due diligence, this Court has previously stated:

> Due diligence is a "fluid concept" which must be determined on a "case by case" basis. *Commonwealth v. Lloyd,* 370 Pa.Super. 65, 535 A.2d 1152, 1160 (Pa. 1988). But it is well settled that a "defendant incarcerated in another jurisdiction will be deemed 'unavailable' for the period of time during which his presence, despite the Commonwealth's duly diligent efforts, cannot otherwise be ob-

---

**6.** Mississippi and Louisiana are not parties to the IAD.

tained." *Id.* (citing *Commonwealth v. Maxwell*, 355 Pa.Super. 575, 513 A.2d 1382, 1385 (Pa.1986)). What is more, "in addition to any other circumstances precluding the availability of the defendant ... the defendant should be deemed unavailable for the period of time during which ... a responding jurisdiction delayed ... extradition." *Id.* (citing *Commonwealth v. DeMarco*, 332 Pa.Super. 315, 481 A.2d 632, 635 (Pa.1984)). When it has been determined that the Commonwealth adhered to procedures requested by the sending jurisdiction and has properly relied on that jurisdiction's assertions, the Commonwealth will have exercised "due diligence." *Id.* Furthermore, insofar as the Commonwealth believed it pursued the prisoner's return to the fullest extent within its control, any "period of inactivity" is excluded from the running of the statute of limitations. *Id.* What is important is what the Commonwealth did do; not what it did not do. *Id.* at 1161.

*Commonwealth v. Woods*, 444 Pa.Super. 321, 663 A.2d 803, 807 (1995). With this understanding, we may now calculate the various dates to determine whether a violation of the IAD occurred.

■ Although Horne arrived in Pennsylvania on March 22, 2010, he was unavailable for trial in York County until December 23, 2010, because he was incarcerated and awaiting trial in Franklin County during that time. *Id.* Franklin County informed the York County District Attorney's office that York County could take custody of Horne following sentencing in Franklin County. *See DeMarco*, 481 A.2d at 635. Additionally, the York County District Attorney's office presented testimony that it kept in regular contact with the court in Franklin County to determine when Horne would be available for transfer to York County. Based on this, we disagree with Horne's contention that York County failed to exercise due diligence in obtaining custody of Horne. *Id.*

■ Horne arrived in York County on December 23, 2010. At that point, the Commonwealth had 120 days to bring Horne to trial. The Commonwealth attempted to bring all four cases to trial on April 13, 2011, 111 days later. However, the trial court dismissed Horne's cases that day. The Commonwealth immediately appealed. We exclude the period during which the case was on appeal from our IAD calculation because the Court of Common Pleas lacked jurisdiction during that time. *See* 42 Pa.C.S. § 9101, Article IV(c).

■ This Court remanded Horne's original appeal for a hearing on his motion to dismiss on February 14, 2012. For purposes of the IAD, the clock resumed tolling when the trial court reheard Horne's motion to dismiss on March 23, 2012, pursuant to this Court's instructions. Following the trial court's denial of Horne's motion to dismiss, the Commonwealth immediately requested a continuance under Article IV(c) of the IAD, as the next trial term would fall outside the 120–day time restriction. We exclude the time during the trial court's granted continuance from our IAD calculation because the Commonwealth demonstrated good cause in seeking the continuance. *Id.*

■ The first of Horne's trials began on April 2, 2012. From the time Horne became available for trial in York County to April 2, 2012, 112 days elapsed for purposes of the IAD. Because no violation of the IAD time restriction occurred, we cannot grant Horne relief on this claim.

Horne next argues that the trial court erred in denying his motion to dismiss based on Pennsylvania Rule of Criminal Procedure 600. Horne's argument fails

because the mechanical run date had not yet expired at the time of his last trial.

▆▆▆▆ Rule 600 provides, in relevant part, as follows:

Rule 600. Prompt Trial

(A) Commencement of Trial; Time for Trial

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or nolo contendere.

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\* \* \*

(e) When an appellate court has remanded a case to the trial court, the new trial shall commence within 365 days from the date of the written notice from the appellate court to the parties that the record was remanded.

\* \* \*

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600. We review Horne's Rule 600 argument according to the following principles:

In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party. Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ... courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused,

but the collective right of the community to vigorous law enforcement as well. *Commonwealth v. Ramos,* 936 A.2d 1097, 1100 (Pa.Super.2007) (en banc).

Here, York County took custody of Horne on December 23, 2010. Prior to that, Horne was incarcerated in Maryland and in Franklin County, Pennsylvania, and therefore unavailable for trial. *See* Pa. R.Crim.P. 600. Rule 600 commenced tolling on December 23, 2010 and continued for 111 days, until April 13, 2011, when the Commonwealth called the case for trial. The trial court dismissed the charges on April 13 and the Commonwealth immediately appealed. We exclude the time during which the case was on appeal because the Commonwealth did not take the appeal in bad faith and it was diligent in pursuing the appeal. *See Commonwealth v. Boczkowski,* 577 Pa. 421, 846 A.2d 75, 84 n. 9 (2004). This Court remanded the case on February 14, 2012, at which point tolling of the mechanical run date resumed. The Commonwealth called the last of Horne's cases to trial on May 14, 2012. Between February 14 and May 14, 2012, 91 days elapsed. Because the last of Horne's cases began within 203 days of Horne becoming available for trial in York County, all of Horne's cases took place within the 365-day limit. Accordingly, Horne's argument is meritless and we cannot grant him relief on this claim.

In his third issue, Horne argues that the trial court erred in permitting the testimonies of Justin Bishop and Detective Sarah Francis because their testimony was unduly prejudicial. We disagree.

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision on such a question absent a clear abuse of discretion. *Commonwealth v. Zugay,* 745 A.2d 639 (Pa.Super.2000).

Justin Bishop testified that he and Horne had conversations regarding the York County bank robberies while incarcerated together in Franklin County. Horne takes issue with Bishop's reference to his incarceration because Horne had a separate case in Franklin County at the time. The fact that testimony referenced Horne being in jail is not *per se* prejudicial. *See Commonwealth v. Johnson,* 576 Pa. 23, 838 A.2d 663, 680 (2003) (although no reference may be made at trial in criminal case to defendant's arrest or incarceration for previous crime, no rule prohibits reference to defendant's incarceration or arrest for crimes charged in case being tried). Moreover, the brief mention of Horne's incarceration did not unduly prejudice him, as the jury could reasonably infer that he was incarcerated prior to trial because he was accused of committing the robbery at issue, and not some previous offense. *See Commonwealth v. Wilson,* 538 Pa. 485, 649 A.2d 435, 446 (1994) (testimony indicating defendant was incarcerated prior to trial was not improper where jury could reasonably infer defendant's detention was result of criminal acts for which defendant was on trial). Accordingly, the trial court did not abuse its discretion in admitting Bishop's testimony.

Detective Sarah Francis testified that she was present during Horne's arrests, when his car was searched, and that a plastic bag, baseball cap, and cell phone were found in the car. Detective Francis also identified Horne. Horne argues that permitting Detective Francis' testimony was tantamount to an admission that Horne previously violated the law. In response to this concern, the trial court prohibited Detective Francis from mentioning Horne's criminal charges in Maryland or elsewhere, nor was she allowed to testify as to which arrests she assisted in. In

other words, nothing was said at trial to imply that Detective Francis knew Horne from prior criminal activity. Moreover, Detective Francis based her testimony on personal observation and was relevant to Horne's identification as well as showing a connection between the items used in the robberies and the items found in Horne's car. *See* Pa.R.E. 401 (evidence considered relevant if it tends to make existence of material fact more or less probable than without the evidence). Based on the relevant and limited nature of Detective Francis' testimony, the trial court did not abuse its discretion in permitting her to testify.

In his final issue, Horne argues that the jury's verdict was against the weight of the evidence. Horne highlights conflicts in the testimonies of certain witnesses and asserts that such inconsistencies amount to his conviction being against the weight of the evidence. In reviewing his claim, we adhere to the following legal principles:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

[*Com. v.*] *Widmer,* 560 Pa. [308] 322, 744 A.2d 745, 753 [ (Pa.2000) ] (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record

shows that the action is a result of partiality, prejudice, bias or ill-will. *Id.* (quoting *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 625 A.2d 1181, 1184–85 (1993)).

*Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1054–55 (2013) (some internal citations omitted).

■ In its opinion in support of its order denying Horne's post-sentence motions dated September 27, 2012, the trial court addressed whether the verdict was against the weight of the evidence and concluded that Horne's claim lacked merit. We agree. Here, the jury resolved the inconsistencies among the testimonies as it saw fit and reached a verdict. *See Commonwealth v. Johnson*, 542 Pa. 384, 668 A.2d 97, 101 (1995) (jury free to believe all, none or part of testimony of both Commonwealth and defense witnesses at trial). The trial judge, having observed the proceedings, determined the jury's verdict was not against the weight of the evidence. Our review of the record leads us to agree. There being no misapplication of law or manifestly unreasonable judgment, we find Horne's claim to be meritless.

Order affirmed. Judgment of sentence affirmed.