J-S67004-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
           Appellee :
:
          v. :
:
TOM HAL CORNELISON, III, :
:
          Appellant : No. 1913 WDA 2013

Appeal from the Judgment of Sentence July 19, 2012,
Court of Common Pleas, Cambria County,
Criminal Division at No. CP-11-CR-0000769-2011

BEFORE: DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.: **FILED NOVEMBER 17, 2014**

Appellant, Tom Hal Cornelison, III ("Cornelison"), appeals from the judgment of sentence of the Court of Common Pleas, Cambria County, following his convictions of burglary, 18 Pa.C.S.A. § 3502(a), criminal trespass, 18 Pa.C.S.A. § 3503(a)(1)(ii), and criminal mischief, 18 Pa.C.S.A. § 3304(a)(4). After a review of the record, we affirm the judgment of sentence.

A summary of the relevant facts and procedural history are as follows. Cornelison was involved in an on-and-off relationship with Dora Vetter ("Vetter"). On March 26, 2011, Cornelison called Vetter and asked her if she would give him a ride to do a few errands. During this time, Cornelison and Vetter got into an argument. As a result of the argument, Vetter dropped Cornelison off at an establishment. Throughout the course of the day,

*Former Justice specially assigned to the Superior Court.

Cornelison called Vetter numerous times. Vetter took some of the calls but ignored others. That evening, Vetter returned to her home to find her front door broken open and the door frame damaged. Every room of her house was in disarray and damaged. Vetter immediately called the police.

While the police were at her house, Vetter found a wallet on the floor. The police opened the wallet and found Cornelison's driver's license inside. The police went to Vetter's neighbors' homes to ask if anyone had seen anything. One neighbor, Judith Litko ("Litko") told police that Cornelison knocked on her door and asked to use her phone. Litko allowed Cornelison to use her phone. After Cornelison put the phone down, Litko watched him walk across the street to Vetter's home, slam into the door with his shoulder, fall into the apartment, and then close the door. When the police hit the redial button on Litko's phone, Vetter's phone rang.

Cornelison was charged with the aforementioned crimes. A jury trial commenced on February 29, 2012. At trial, Cornelison did not dispute that he broke down the door to Vetter's home and destroyed the house, but argued that he had permission to be at Vetter's home. At the conclusion of testimony, the jury found Cornelison guilty of all charges.

On July 12, 2012, Cornelison filed a motion for new trial, challenging the weight of the evidence. The trial court denied the motion for new trial on July 17, 2012. On July 19, 2012, the trial court sentenced Cornelison to 20 to 40 months of incarceration. Cornelison filed a post-sentence motion

on July 30, 2012. Oral arguments on the post-sentence motion were held on October 5, 2012. In a written opinion on November 1, 2012, the trial court denied Cornelison's post-sentence motion. Cornelison did not file a direct appeal at that time.

On June 7, 2013, Cornelison filed a petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541 *et. seq*. On September 5, 2013, the PCRA court reinstated Cornelison's direct appeal rights and right to file post-sentence motions within 10 days. The PCRA court deferred ruling on Cornelison's remaining claims pending the conclusion of direct review. On September 13, 2013, Cornelison filed post-sentence motions requesting a judgment of acquittal, a new trial, and a modification of his sentence. On November 7, 2013, the trial court denied Cornelison's motions for a judgment of acquittal and a new trial, as well as Cornelison's motion to modify his sentence based on excessiveness. The court deferred ruling on Cornelison's motion to modify his sentence based on the court's alleged failure to credit Cornelison with a certain amount of time served. It finally disposed of Cornelison's post-sentence motions on November 18, 2013.

On November 21, 2013, Cornelison timely filed a notice of appeal to this Court. He raises the following issue for our review:

> Whether the verdict reached by the jury to convict [Cornelison] of burglary and criminal trespass, and which was sustained by the trial court on post-

- 3 -

sentence motions, was against the weight of the
evidence presented by the Commonwealth?

Cornelison's Brief at 4.

Cornelison argues that "the Commonwealth utilized largely
circumstantial, self-serving, and unreliable evidence against [him,]" and
failed to produce eye-witness testimony of the crimes for which he was
convicted. *Id.* at 8. Cornelison further argues that "[t]he majority of the
witnesses with knowledge of the situation in this case gave interesting
testimony that strongly suggested that [he] lived at the victim's
residence[,]" and that the only witness to testify any differently was the
victim. *Id.* at 8-9.

In its written opinion pursuant to Pa.R.A.P. 1925(a), the trial court
noted that "the [c]ourt twice denied [Cornelison's] post-sentence motions
for a new trial challenging the weight of the evidence presented at trial."
Trial Court Opinion, 1/15/14, at 3. The trial court concluded that it did not
abuse its discretion by denying Cornelison's motion for a new trial as it
"presided over the trial and the evidence." *Id.* Furthermore, the trial court
found that "it cannot be said that the jury rendered a verdict that was so
contrary to the evidence as to shock one's sense of justice." *Id.*

Our standard of review is well settled:

> A motion for a new trial based on a claim that the
> verdict is against the weight of the evidence is
> addressed to the discretion of the trial court. A new
> trial should not be granted because of a mere conflict

in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, 'the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'' It has often been stated that 'a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.'

\* \* \*

Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.** Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued

> represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Horne*, 89 A.3d 277, 285-86 (Pa. Super. 2014) (citing *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (emphasis in original) (citations omitted)).

In this case, although Cornelison frames the issue as an abuse of discretion claim, he does not present any argument as to how he believes the trial court abused its discretion in denying his request for a new trial. Instead, he directs his entire argument to the underlying question of whether his convictions are against the weight of the evidence. *See* Cornelison's Brief at 8-9. As stated above, this is not the question before us for review, as our review is limited to determining whether the trial court abused its discretion in ruling upon his weight claim, not the underlying question of whether the verdict was in fact against the weight of the evidence. *See Horne*, 89 A.3d at 285.

Ignoring this failing, our review of the record reveals that the trial court did not abuse its discretion in deciding that the verdicts in this case were not against the weight of the evidence. At trial, Cornelison testified that he lived with Vetter, stayed at her apartment when she left for work, and had a key that she authorized him to purchase. N.T., 2/29/12, at 137-40. Cornelison stated that he would occasionally stay with his friend, Bert

Wissinger ("Wissinger"), on 12th Street, but slept at Vetter's apartment "[n]inety-nine percent of the time." *Id.* at 139.

Cornelison also presented the testimony of his mother, Linda Spangenberg ("Spangenberg"), and Wissinger in support of his testimony. Spangenberg testified that up until the date of the incident, she contacted Cornelison through Vetter's cell phone and forwarded mail to him at Vetter's apartment "[b]ecause as far as [she] knew, that's where [he] was living." *Id.* at 118. Spangenberg further testified that she picked up Cornelison's belongings from Vetter's apartment. *Id.* Cornelison never told her that he had personal belongings elsewhere. *Id.* at 121.

Wissinger testified that Cornelison stayed at Vetter's apartment most of the time but lived with him on 12th Street on the other days. *Id.* at 130-31. Wissinger also testified that Cornelison had dishes, clothing, bedroom items, large containers that had his belongings in them, knives, and jewelry at his home. *Id*. at 130.

In contrast, Vetter testified that only her name was on the lease of the apartment and that Cornelison lived with Wissinger on 12th Street. *Id.* at 37-38. Although Cornelison had personal belongings at her apartment and stayed over at the apartment three to four times a week, Vetter testified that Cornelison did not have a key to the apartment. *Id.* at 38-39. Vetter would give Cornelison a key at times but he did not have his own key to enter when he wanted to because she "didn't want him to have a key all the

time" and did not want him in the apartment when she had not given him the key. *Id.* at 39-40.

The Commonwealth also presented the testimony of Litko, Vetter's neighbor, who testified that she witnessed Cornelison break down Vetter's door on the night in question. *Id.* at 27. Litko testified that Cornelison knocked on her door and asked if he could use her phone. *Id.* at 26. Litko stated that she had never seen Cornelison before that day. *Id.* After Cornelison used the phone, Litko testified that Cornelison ran through her yard, "[a]nd when he hit the curb he started at full gait, and he smashed his shoulder into [Vetter's] door and broke the door down." *Id.* at 27. Cornelison fell onto the steps on the inside of the apartment and slammed the door shut. *Id.*

The jury heard the conflicting testimony and made its credibility determinations, apparently choosing to believe Vetter that Cornelison did not live at her apartment and was not permitted to be there on the evening in question. As we are mindful of "our obligation to respect the fact finder's credibility determinations and the weight it accords the evidence," we find no fault with the trial court's conclusion that the verdict is so contrary to the evidence as to shock one's sense of justice. *See Renna v. Schadt*, 64 A.3d 658, 670 (Pa. Super. 2013). Finding no abuse of discretion, Cornelison is not entitled to relief on his weight claim.

Judgment of sentence affirmed.

J-S67004-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2014