J-S50038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JUSTIN WILLIAMS MINAYA | |
| Appellant | No. 2066 MDA 2015 |

Appeal from the Judgment of Sentence July 15, 2015
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0000094-2015

BEFORE: MUNDY, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED JULY 06, 2016**

Appellant, Justin Williams Minaya, appeals from the July 15, 2015 aggregate judgment of sentence of 42 to 96 months' imprisonment, imposed after he was convicted of two counts of aggravated assault and one count of disorderly conduct.[1] After careful review, we affirm.[2]

We summarize the relevant procedural history of this case as follows. On February 6, 2015, the Commonwealth filed an information, charging Appellant with the above-mentioned offenses. "The charges resulted from an incident between [Appellant] and Jean Dorilus ("Dorilus") on October 29,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), and 5503(a)(1), respectively.

[2] We note the Commonwealth elected not to file a brief in this matter.

2014, in the Borough of Chambersburg in which [Appellant] was alleged to have attacked the victim with a hatchet." Trial Court Opinion, 1/14/16, at 1. Appellant proceeded to a jury trial on June 25, 2015. Relevant to this appeal, the Commonwealth presented three eyewitnesses, Dorilus, Richardson Dormeus, and Joseph Berdy, none of whom had met Appellant prior to the incident on October 29, 2014. Appellant testified in his own defense. At the conclusion of the trial, the jury found Appellant guilty of all charges. On July 15, 2015, the trial court sentenced Appellant to 42 to 96 months' imprisonment on the first count of aggravated assault, a concurrent 18 to 36 month sentence for the second aggravated assault count, and a consecutive 1 to 12 month sentence for disorderly conduct. On July 27, 2015, Appellant filed a timely post-sentence motion.[3] On September 1, 2015, the trial court entered an order granting part of Appellant's post-sentence motion insofar that it modified the sentence to reflect that all three sentences were to run concurrent to each other, resulting in a new aggregate sentence of 42 to 96 months' imprisonment. On October 30, 2015, the trial court entered an order denying the balance of Appellant's

---

[3] We observe that the tenth day fell on Saturday, July 25, 2015. When computing a filing period, "[if] the last day of any such period shall fall on Saturday or Sunday … such day shall be omitted from the computation." 1 Pa.C.S.A. § 1908. Therefore, the tenth day for Appellant to file a timely post-sentence motion was on Monday, July 27, 2015. As a result, we deem his post-sentence motion timely filed.

post-sentence motion. On November 25, 2015, Appellant filed a timely notice of appeal.[4]

On appeal, Appellant raises two issues for our review.

> [1.] Whether the trial court erred in denying [Appellant]'s post-sentence motion for judgment of acquittal by finding that the Commonwealth had established beyond a reasonable doubt each of the elements of aggravated assault and disorderly conduct when the numerous and significant discrepancies in the testimony of the Commonwealth's witnesses made their testimony so unreliable and inconclusive that the jury could not reasonably have concluded that the Commonwealth had proven all of the elements of the offenses beyond a reasonable doubt[?]
>
> [II.] Whether the trial court abused its discretion in denying [Appellant]'s post-sentence motion for a new trial by finding that the conviction was not against the weight of the evidence when that evidence – primarily eyewitness testimony – was so inconsistent that the jury could not reasonably have concluded that the Commonwealth had proven his guilt beyond a reasonable doubt[?]

Appellant's Brief at 10.

In his first issue, Appellant purports to challenge the sufficiency of the Commonwealth's evidence due to various highlighted inconsistencies in the eyewitnesses' testimony. Appellant's Brief at 22-26. However, any

---

[4] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

challenge to discrepancies in witnesses' testimony goes to the weight of the evidence, not its sufficiency. *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004); *Commonwealth v. Boxley*, 838 A.2d 608, 612 (Pa. 2003). As Appellant does not raise any argument that the Commonwealth's case was insufficient as a matter of law, his first argument on appeal does not entitle him to relief.

In his second issue, Appellant challenges the weight of the evidence, on the same ground as he purportedly challenges its sufficiency. Appellant's Brief at 26-27. We begin by noting our well-settled standard of review. "A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted). An argument that the jury's verdict was against the weight of the evidence concedes that the evidence was sufficient to sustain the convictions. *Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, *Lyons v. Pennsylvania*, 134 S. Ct. 1792 (2014). Our Supreme Court has admonished that "[a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). Instead, "the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is

to deny justice." **Id.** (internal quotation marks and citation omitted). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice …." **Id.**

As an appellate court, it "is not [our role] to consider the underlying question of whether the verdict is against the weight of the evidence." **Commonwealth v. Morales**, 91 A.3d 80, 91 (Pa. 2014) (citation omitted), *cert. denied*, **Morales v. Pennsylvania**, 135 S. Ct. 1548 (2015). An argument that the jury's verdict was against the weight of the evidence remains "[o]ne of the least assailable reasons for granting … a new trial …." **Id.** (citation omitted). "Thus, only where the facts and inferences disclose a *palpable abuse of discretion* will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal." **Id.** (citation omitted; emphasis in original).

In this case, Appellant avers the jury's verdict was against the weight of the evidence based on the following discrepancies.

> (a) Dorilus – in testifying about the first incident before the alleged hatchet attack – said it was started by [Appellant] demanding money from Dorilus. He also said that the incident was started by [Appellant]'s girlfriend demanding a cigarette from Dorilus. After listening to Dorilus's testimony, nobody – not even the jury – could figure out why this alleged assault occurred.
>
> (b) Dorilus also testified that [Appellant] left the area after the first incident. He said that six or seven minutes later [Appellant]'s girlfriend came back without [Appellant]. He also said that three or four minutes after [Appellant] left the first time he

- 5 -

was back with the hatchet. That is not even possible. [Appellant] was taken to the police station after the initial incident where he was charged with a summary offense and released to his mother. They then went to her house for about half an hour before she dropped him off near his apartment.

(c)    Dorilus testified that when [Appellant] came back after the first incident that he was scared because [Appellant] "looked crazy." But Dorilus also testified that he did not think [Appellant] would do anything. If Dorilus was scared, why did he not run away? He had plenty of time to get into his apartment. If Dorilus did not think [Appellant] was going to do anything, why was he scared? The answer to those questions is that Dorilus was not scared of [Appellant]. He was just trying to sell his story to the jury.

(d)    Dorilus testified that [Appellant] had the hatchet in his left hand. Berdy then testified that [Appellant] had the hatchet in his right hand. Which one was it? Nobody seems to know the answer to such an important question.

(e)    Dorilus testified that there were six or seven guys around when [Appellant] came back. Dormeus did not remember how many people were around when [Appellant] came back. And Berdy testified that it was just the three of them (Berdy, Dormeus, and Dorilus).

(f)    Dorilus and Berdy testified that the hatchet the prosecutor showed during trial was the one [Appellant] had on the night in question; however, Dormeus testified that the hatchet was not the same one [Appellant] possessed.

(g)    Dormeus was not able to identify [Appellant] as the attacker in court. He said he identified [Appellant] on the night in question based on the clothing [Appellant] was wearing – a white t-shirt. However, the night in question was October

29, 2015; a cold night when nobody would be running around wearing only a t-shirt.

(h) Dorilus testified that he, Berdy, and Dormeus watched as [Appellant] walked up the block toward them with something in his left hand, which was concealed behind his back. Dormeus testified that all three of them watched [Appellant] approach from around a back hallway of the building. And finally Berdy, who had just come back from Sheetz, testified that [Appellant] was already on the scene arguing with Dorilus.

Appellant's Brief at 23-25.

The trial court supplied the following rationale in support of its conclusion that Appellant was not entitled to a new trial based on his weight of the evidence claim.

By virtue of the jury's verdict, it appears that [it] did not view these minor inconsistencies to negatively impact the credibility of the witnesses. The [trial c]ourt agrees. Dorilus' testimony regarding the cause of the altercation, rather than being inconsistent, simply appears to detail two separate incidents occurring on the same day which may have both contributed to the attack. The jury was free to reconcile the testimony that [Appellant] and Dorilus had a disagreement over money and the testimony about the incident between Dorilus and [Appellant]'s girlfriend and conclude that both contributed to [Appellant]'s actions. Further, Dorilus was cross-examined as to inconsistenc[ies] in his trial testimony as compared to his preliminary hearing testimony.

The [trial c]ourt does not view the discrepancy in Dorilus' testimony regarding the time between the incidents to be unusual. In the heat of the moment, a difference of 3 to 7 minutes or whether Berdy arrived prior to or immediately following [Appellant]'s arrival is understandable, especially

when recalling the events that occurred months prior to the testimony at trial. Likewise, the witnesses' memory of whether the hatchet was in [Appellant]'s right or left hand may easily be confused, yet does not prevent the jury was concluding that [Appellant] threatened the victim with a deadly weapon.

Finally, [Appellant]'s arguments that if Dorilus was actually threatened, he should have run or that [Appellant] was misidentified because he would not have been wearing a t-shirt in late October do not contradict or cast doubt upon any evidence actually presented.

The [trial c]ourt finds no reason to doubt the weight given to the evidence by the jury. While minor inconsistencies exist, the basic facts remained constant between Dorilus, Dormeus, and Berdy and the investigating officers. Simply stated, the verdict was not so contrary to the evidence presented as to shock [the trial c]ourt's sense of justice. To the contrary, the verdict rendered was entirely consistent with the evidence.

Trial Court Opinion, 1/14/16, at 11-12.

It is axiomatic that the jury is the ultimate finder of fact at trial.

[T]he veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the witness. As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury.

**Commonwealth v. Alicia**, 92 A.3d 753, 761 (Pa. 2014) (citation omitted).

Likewise, "[t]he trier of fact while passing upon the credibility of witnesses

and the weight of the evidence produced, is free to believe all, part or none

- 8 -

of the evidence." ***Commonwealth v. Feese***, 79 A.3d 1101, 1122 (Pa. Super. 2013), *appeal denied*, 94 A.3d 1007 (Pa. 2014).

In this case, as the trial court pointed out, the jury was free to find Dorilus, Dormeus, and Berdy's trial testimony credible, find Appellant's testimony not credible, and resolve any inconsistencies in the Commonwealth's favor. ***See generally Commonwealth v. Horne***, 89 A.3d 277, 286 (Pa. Super. 2014) (concluding the weight of the evidence claim could not prevail as "the jury resolved the inconsistencies among the testimonies as it saw fit and reached a verdict[]"), *appeal denied*, 102 A.3d 984 (Pa. 2014). The jury was presented with Dorilus, Dormeus, and Berdy's testimony and Appellant's. They weighed both and ultimately concluded that Dorilus, Dormeus, and Berdy's testimony was credible and Appellant's was not credible. As an appellate court, we will not reweigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Serrano***, 61 A.3d 279, 289 (Pa. Super. 2013) (citation omitted). Based on these considerations, we conclude the trial court did not commit a palpable abuse of discretion in deciding the jury's verdict was not against the weight of the evidence. ***See Morales***, ***supra***.

Based on the foregoing, we conclude Appellant's issues on appeal are devoid of merit. Accordingly, the trial court's July 15, 2015 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/6/2016