J-S61020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES ISHAM LAWRENCE | |
| Appellant | No. 1878 WDA 2015 |

Appeal from the Judgment of Sentence June 24, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012037-2013

BEFORE: PANELLA, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.: **FILED SEPTEMBER 20, 2016**

James Isham Lawrence appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County. After our review, we affirm.

The trial court detailed the facts of this case as follows:

On March 29, 2013, Steven Lee and Latia Lee joined family members to celebrate Lateesha Lee Jones's birthday. As part of the celebration, the family rented a "party bus" limo to transport family and friends to different bars in Pittsburgh. The party bus initially parked in front of Craig's Bar on Chartiers Avenue in the West End neighborhood of the City of Pittsburgh at 11:00 P.M. to allow family and friends to board.

One of the family members, Matthew Sherrell, invited Summer Kerley and her friends, Clarissa Clark and Samantha Powe, to join the party. Kerley, Clark and Powe arrived at Craig's Bar and boarded the party bus, but left shortly thereafter because the bus was not leaving at that time. Powe drove Kerley and Clark to Homewood, where they met [James Lawrence], Michael Lyons, and Jerrick Lane-Bryant at the Lang Bar. Kerley and

[Lawrence] were dating at the time, and [Lawrence] was using Kerley's vehicle.

At 12:30 A.M., the party bus left Craig's Bar and traveled to the Caravan Club in Pittsburgh's South Side. Sherrell called Kerley to inform her of the new location of the party bus, and to invite the three women back onto the bus. Powe then drove Kerley and Clark to the South Side and the three women rejoined the group on the party bus around 2:00 A.M. [Lawrence], Lane-Bryant, and Lyons remained at the Lang Bar.

Sometime after 2:00 A.M., once everyone had re-boarded the party bus, the driver began to drive back to the West End and Craig's Bar. During the drive back to Craig's Bar, an argument broke out between the female members of the Lee family and Clark, Powe, and Kerley. The argument progressed into a physical fight between the females. Steven Lee unsuccessfully attempted to remove his sister Latia Lee from the fight.

During the altercation, Powe called [Lawrence] and urged to "come get these nigga's." In response, [Lawrence] had Lane-Bryant drive [Lawrence] and Lyons to the West End, using Kerley's vehicle. Clark moved to the front of the bus and spoke with the bus driver about where he was driving, and was also on the phone to [Lawrence] while he was en route to the West End. In the aftermath of the phone call to [Lawrence], Clark announced to the occupants of the bus, "it's not over, my bro's are on the way coming to spank him and her," referring to Steven Lee and Latia Lee. [Lawrence] and his cohorts arrived as the bus was arriving in the vicinity of Craig's Bar. The bus driver stopped the party bus, and parked it fifty feet from Craig's Bar. Lane-Bryant parked in front of the bus.

Sensing trouble, the bus driver ran off the bus and fled the immediate area. Clark also left the bus and ran to Kerley's vehicle, and yelled at [Lawrence], Lyons, and Lane-Bryant, "Bros, what took you so long? Brother, brother, get out of the car. These niggas and bitches jumped us."

[Lawrence], Lyons, and Lane-Bryant exited the vehicle. [Lawrence] told Lane-Bryant to grab a thirty round 40 caliber clip, and both Lyons and [Lawrence] exited the vehicle with their respective 40 caliber firearms. [Lawrence] and Lyons ran onto the bus with their firearms. [Lawrence] remained at the front of the bus, Lyons ran to the back of the bus. [Lawrence] yelled, "I want my bitch and my sister off this bus." Lyons asked Powe,

"Where them nigga's?" Powe pointed to Steven Lee and Latia Lee, near the front of the bus, and said, "them right there." Clark added that she wanted Latia and Steven "spanked."

[Lawrence] and Lyons then forced Steven Lee and Latia Lee off the bus at gunpoint. Latia clung to her brother as they were dragged off the bus. When they reached the steps, Kerley and Lane-Bryant helped force them off the bus. Once they reached the sidewalk, [Lawrence] and Lyons grabbed Steven Lee, separating him from Latia, and dragged him around the front of the bus. Latia Lee tried to chase after her brother, but Kerley and Lane-Bryant stopped her. Kerley hit Latia repeatedly, and Lane-Bryant struck Latia repeatedly with the thirty round clip.

[Lawrence] and Lyons moved Steven Lee to the driver's side (street side) of the bus, and started to beat him. Steven Lee broke free and tried to run away towards the back of the bus. [Lawrence] raised his firearm and shot Steven Lee several times. Steven Lee suffered four gunshot wounds. The first gunshot entered his left chest, striking a rib and the left ventricle of his heart, causing massive hemorrhaging and heart failure. The second gunshot entered his upper back and exited his neck, severing his spinal cord and perforating his left lung. The third gunshot struck his left hand, and the fourth gunshot grazed his right knee.

Sherrell, having run off the bus into a nearby parking lot to retrieve a firearm when [Lawrence] arrived, walked back towards the bus with a 9mm firearm. At the same time, [Lawrence] ran around the back of the bus towards Kerley, who was still beating Latia Lee with Lane-Bryant. [Lawrence] tapped Kerley on the shoulder and told her it was time to leave. Kerley, [Lawrence], and Lane-Bryant started to make their way back to Kerley's vehicle on the passenger's side of the bus as Sherrell fired at them. Latia ran back onto the bus for cover. Lyons ran with Kerley, [Lawrence], and Lane-Bryant, and shot back at Sherrell as he approached the vehicle.

[Lawrence] and Kerley jumped into the front passenger seat of the vehicle, and [Lawrence] leaned over Kerley to protect her. Lane-Bryant jumped into the driver's seat and ducked for cover. Sherrell continued to shoot at them, striking the vehicle and shooting out all four tires and the windows. Lyons jumped into the back seat and continued to shoot at Sherrell until his firearm was empty. [Lawrence] gave Lyons his firearm so that Lyons

could continue to shoot back at Sherrell. Lyons replaced the clip in [Lawrence]'s gun with the thirty round clip that Lane-Bryant had been holding. When Lyons exchanged clips, he dropped [Lawrence]'s clip onto the street. [Lawrence] told Lane-Bryant to retrieve the dropped clip, but Lane-Bryant did not retrieve the clip because Sherrell and Lyons were still exchanging gunfire.

Lane-Bryant placed the keys in the ignition and attempted to drive away, but the vehicle did not move because all four tires were flattened from gunshots. Sherrell was still shooting at the vehicle, and Lyons exited the vehicle and fled to Kerley's nearby residence, at 1111 Sutherland Street. Lane-Bryant continued to attempt to drive the vehicle, and was able to gain enough momentum to make it to Kerley's home.

The shooting stopped after Lane-Bryant drove away. On the bus, Latia told Lateesha that they took Steven off of her and got him. Lateesha and Latia ran off the bus together to find Steven. They found Steven lying in the middle of the street at the back of the bus. Lateesha gave Steven CPR and held his bleeding wounds until the ambulance arrived, but he was generally unresponsive. Steven Lee was emergently transported to the hospital, where life-saving surgeries were attempted, but they were to no avail. Steven Lee was pronounced dead at the hospital.

At Kerley's residence, Lane-Bryant, Kerley, and [Lawrence] met Powe, Clark and Lyons. Once inside the house, [Lawrence] asked Lane-Bryant whether he picked up [Lawrence]'s clip as instructed. Lane-Bryant responded that he did not. [Lawrence] told Lane-Bryant to get the clip, but Powe responded that Lane-Bryant could not go back outside since the man from the bus was dead, and the police were there. [Lawrence] attacked Lane-Bryant and punched him until Kerley, Powe, and Clark were able to pull him off. Fearful of [Lawrence], Lane-Bryant went back toward the scene to retrieve the clip, but by that time police had arrived on the scene, and Lane-Bryant returned to Kerley's without retrieving the clip.

At the same time, Kerley took [Lawrence] upstairs to calm him down. [Lawrence] told Kerley that he pointed his gun at Steven Lee and told him "to go ahead and he wouldn't go ahead, so he shot." Kerley asked [Lawrence] why he shot Steven Lee, and [Lawrence] responded that it looked like Steven Lee was

- 4 -

grabbing something and was going to run away, so [Lawrence] shot him.

The group at Kerley's home collected the two firearms, placed them in a bag, and Lyons walked them to Clark's nearby home to be disposed of. Powe, Clark, and Kerley left at 11:00 A.M. to retrieve Powe's vehicle from the South Side, where it had been parked earlier that morning. [Lawrence] also left, leaving behind Lane-Bryant.

Officers at the scene of the killing recovered window glass from a vehicle and a part of a vehicle door, which belonged to Kerley's vehicle. Officers canvassed the area and eventually discovered Kerley's heavily damaged vehicle behind her residence at 1111 Sutherland Street. SWAT entered the residence later that morning and took Lane-Bryant into custody, whereupon he was interviewed and he provided a statement as the events surrounding the shooting of Lee.

The ensuing investigation led officers to confirm [Lawrence] as the shooter in the death of Steven Lee and a warrant was issued for his arrest. [Lawrence] became aware of the warrant and thereupon had Kerley drive him to Atlanta, Georgia. The US Marshals Fugitive Task Force finally arrested [Lawrence] on August 21, 2013.

Trial Court Opinion, 2/8/16, at 4-11.

Following trial, a jury convicted Lawrence of third-degree murder and carrying a firearm without a license. The court sentenced Lawrence to an aggregate term of imprisonment of seventeen to thirty-four years. Lawrence filed post-sentence motions challenging both the sufficiency and weight of the evidence. The Honorable Edward J. Borkowski denied Lawrence's post-sentence motions, and Lawrence filed a notice of appeal.

On appeal, Lawrence challenges the weight of the evidence:

Did the trial court err in denying Appellant's post-sentencing motions since Appellant's murder three and VUFA convictions were against the weight of the evidence since the testimony of

> Commonwealth witness Lateesha Jones was incredible [and] unreliable; moreover, the testimonies of Commonwealth witnesses Clarrissa Clark, Jerrick Lane-Bryant, Summer [Kerley], [and] co-defendant Michael Lyons were incredible, unreliable [and] self-serving, and they were witnesses who only testified against Appellant so that they could avoid their own possible murder one convictions and life without parole sentences?

Appellant's Brief, at 3.

In the instant case, Lawrence argues that the Commonwealth's witnesses, Lateesha Jones, Clarrissa Cark, Jerrick Lane-Bryant, Summer Kerley and co-defendant Michael Lyons, testified against him to avoid prosecution or to obtain leniency. He claims that their testimony was "incredible, unreliable and self-serving." Appellant's Brief, at 22. He also argues that there was no physical evidence linking him to the crimes.

> The law pertaining to weight of the evidence claims is well settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015). On appeal, our review is extremely limited, and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. *Id.* Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the

underlying question of whether the verdict is against the weight of the evidence. Instead, our review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. **See Commonwealth v. Morales**, 91 A.3d 80 (Pa. 2014); **Commonwealth v. Smith**, 97 A.3d 782, 788 (Pa. Super. 2014).

Here, Lawrence asks us to reweigh the evidence in his favor, arguing that it is obvious each witness had a motive to lie, in particular, Lane-Bryant, who "provided self-serving testimony against [Lawrence] in an attempt to avoid a Murder One or Murder Three conviction[.]" Appellant's Brief, at 25. Further, he claims that Kerley's testimony was unreliable because "[o]nly after she was charged with crimes that could result in life imprisonment did she tell the police, two months after being charged, her current version of the events relating to the homicide." **Id.** at 27. Additionally, Lawrence argues that "Lyons only testified against [him] so that he could avoid a homicide conviction[.]" **Id.** at 28.

Our case law is clear that a jury sitting as finder of fact is "in the best position to view the demeanor of the Commonwealth's witnesses and to assess each witness' credibility." **Commonwealth v. Olsen**, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). Here, the jury was free to find the Commonwealth's witnesses' testimony credible and resolve any inconsistencies in their testimony in the Commonwealth's favor. **See generally Commonwealth v. Horne**, 89 A.3d 277, 286 (Pa. Super. 2014) (holding Horne's weight of the evidence claim could not prevail as "the jury

resolved the inconsistencies among the testimonies as it saw fit and reached a verdict"). *See Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) ("The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.").

Based on the facts elicited at trial and believed by the jury, the trial court determined that the verdict was not against the weight of the evidence. Lawrence has not demonstrated that the trial court committed a palpable abuse of discretion by rejecting his request for a new trial based on the weight of the evidence. We find no abuse of discretion. *Morales*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2016