J-S11020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMIE BROWN :
:
Appellant : No. 851 WDA 2021

Appeal from the Judgment of Sentence Entered June 9, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000086-2021

BEFORE: PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY OLSON, J.: **FILED: May 11, 2022**

Appellant, Jamie Brown, appeals from the June 9, 2021 judgment of sentence imposing an aggregate two years' probation following her bench trial conviction for theft by unlawful taking or disposition – movable property and simple assault.[1] We affirm.

The trial court summarized the factual history as follows:

On June 27, 2020, at approximately 1:30 p.m., a physical altercation ensued between [Appellant] and her child's father [in a parking lot located along] Carson Street in [the] South Side [neighborhood of Pittsburgh, Pennsylvania]. On the date of the incident, [the victim] had taken his daughter to the TRAC program[,[2] located along] Carson Street [] for court ordered

---

[1] 18 Pa.C.S.A. §§ 3921(a) and 2701(a)(1), respectively.

[2] We take judicial notice that TRAC Services for Families is an organization whose mission is "to provide a range of services and resources for children, youth, adults[,] and families to ensure stable relationships and strong

visitation. [The victim] dropped his daughter off at the program on time and was sitting inside his vehicle for five to ten minutes [afterwards] when [Appellant] approached his [vehicle's] driver's side door. [Appellant] opened [the victim's] driver's side door and asked [the victim], "[w]here's my F-ing daughter?," to which he replied that he had dropped her off at the program.

Subsequently, [Appellant] sprayed [the victim] in the face with mace and began to swing her arms "repeatedly" toward him. [The victim] then screamed, exited his vehicle[,] and "got into a tussle" with [Appellant]. [Appellant] bit [the victim] and sprayed him in the face with mace again. [The victim] was yelling for help when a security guard came out of the TRAC building to break up the altercation, saying that he was calling the police. The security guard was present at the scene when [Appellant] was there, and, after [Appellant] "took off running[,]" he retrieved a bottle of water for [use in rinsing the mace from the victim's] eyes.

[Appellant] took [the victim's cellular telephone] and glasses before she fled toward Carson Street. [The victim's cellular telephone] was [valued at] approximately $200[.00]-$300[.00] and [] his glasses were [valued at] approximately $600[.00]-$700[.00. The victim] never recovered his [cellular telephone] or his glasses. At the time of the incident, there was an outstanding warrant for [Appellant] for a violation of an active Protection From Abuse ("PFA")[, 23 Pa.C.S.A. §§ 6101-6122,] order that [the victim] had filed against her.

Trial Court Opinion, 9/2/21, 3-4 (record citations and footnote omitted).

On June 9, 2021, the trial court, in a non-jury trial, found Appellant guilty of the aforementioned crimes. On that same date, the trial court

---

community connections." *See* https://tracpgh.com/about-2/ (last visited 04/07/2022). The services provided are "geared to strengthen the total family unit, in efforts to improve family relationships and overall functioning, of those families working toward being reunified with their children who are in the foster care system, as well as those involved in complex custody cases." *See* https://tracpgh.com/outpatient-services/ (last visited 04/07/2022).

sentenced Appellant to two years' probation for her theft conviction and two years' probation for her simple assault conviction, which was set to run concurrently to the sentence imposed for the theft conviction.[3]  On June 18, 2021, Appellant filed a post-sentence motion, which the trial court subsequently denied.  This appeal followed.[4]

Appellant raises the following issue for our review: "Did the trial court err by denying [Appellant's] post[-]sentence motion for a new trial because the guilty verdict was contrary to the weight of the evidence provided?" Appellant's Brief at 6.

Appellant's issue raises a claim that the verdict was against the weight of the evidence, for which our standard and scope of review is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial [court] had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial [court] when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

---

[3] Appellant was also ordered to have no contact with the victim, successfully complete a batterers' intervention program, undergo drug and alcohol and mental health evaluations (and successfully complete any recommended treatment), and pay restitution to the victim in the amount of $688.00.  Order of Sentence, 6/9/21.

[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

***Commonwealth v. Horne***, 89 A.3d 277, 285 (Pa. Super. 2014), *citing*

***Commonwealth v. Widmer***, 744 A.2d 745 (Pa. 2000).  A trial court abuses

its discretion "where the course pursued represents not merely an error of

judgment, but where the judgment is manifestly unreasonable or where the

law is not applied or where the record shows that the action is a result of

partiality, prejudice, bias[,] or ill-will."  ***Horne***, 89 A.3d at 285-286 (citation

omitted); ***see also Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013)

(stating, "[t]he term 'discretion' imports the exercise of judgment, wisdom[,]

and skill so as to reach a dispassionate conclusion within the framework of the

law, and is not exercised for the purpose of giving effect to the will of the [trial

court]").  In order for an appellant to prevail on a weight of the evidence claim,

"the evidence must be so tenuous, vague[,] and uncertain that the verdict

shocks the conscience of the [trial] court."  ***Commonwealth v. Sullivan***, 820

A.2d 795, 806 (Pa. Super. 2003) (citation and internal quotation marks

omitted), *appeal denied*, 833 A.2d 143 (Pa. 2003).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited.  Generally, unless the evidence is so unreliable [or] contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

***Commonwealth v. Bowen***, 55 A.3d 1254, 1262 (Pa. Super. 2012), *appeal*

*denied*, 64 A.3d 630 (Pa. 2013).

Appellant challenges the weight of the evidence to support both her theft

by unlawful taking conviction and her simple assault conviction.  Appellant's

Brief at 14-26. Regarding her theft by unlawful taking conviction, Appellant asserts that the victim's testimony regarding Appellant "grabbing" his cellular telephone and glasses conflicts with Appellant's strenuous denial of this fact. *Id.* at 20. Appellant contends that "no objective witness, neither the security guard nor the arresting officer, either saw [Appellant] take anything from the scene, or [be] in possession of [the victim's] property." *Id.* at 21. Appellant argues, "[b]ased upon the relationship dynamics evidenced between the parties at trial, along with the objective testimony about the volatile interaction at TRAC which provided that the parties looked like two wrestlers in the parking lot, [the victim's] vague testimony that [Appellant] 'just grabbed stuff' should be treated with caution." *Id.* at 22.

Concerning the simple assault conviction, Appellant explained that her use of mace, which she admittedly sprayed in the victim's face, was justified, as self-defense, because "[w]hen she opened the door to [the victim's vehicle] after being denied visitation with her child, [she] saw [the victim] furtively moving toward the far side of his front seat, and, because of the animosity between the parties, she became fearful for her safety." *Id.* at 24. Appellant asserts that she "knew [the victim] to carry a weapon with him at all times" even though the victim denied having a weapon in his vehicle that day. *Id.* at 25. The fact that the victim "had to receive treatment for a broken hand after this incident," Appellant contends, is very telling and "seems to create an inference that he had been very violent during this altercation." *Id.*

In denying Appellant's post-sentence motion challenging the weight of the evidence to support both of her convictions, the trial court stated,

[The trial] court found the victim [] to be highly credible. He appeared confident and sincere, and he was consistent in his testimony. Moreover, his testimony was corroborated by the observations made by the responding officer, who observed injuries to [the victim's] face and hand when he responded to the physical altercation call shortly thereafter. Additionally, [the victim's] testimony was corroborated by the observations made by the security guard at the scene, who observed [Appellant] approach [the victim's vehicle] and the physical altercation between [Appellant] and [the victim], and who subsequently intervened to break up the fight.

Moreover, [Appellant] admitted to spraying [the victim] in the face with mace, unprovoked. While [Appellant] claimed that she suspected [the victim] was reaching for a gun in his vehicle before she sprayed him, [the victim] credibly testified that he did not own a gun, nor had [Appellant] ever [observed] him with one. [Appellant] also admitted on cross[-]examination that she never actually saw what [the victim] was supposedly reaching for in his vehicle.

Likewise, the [trial] court did not find [Appellant's] self-serving testimony to be credible in the least. [Appellant] was incredibly hostile and combative, and her testimony had material inconsistencies and was unsupported by the other credible evidence in the record. For example, [Appellant] testified on cross[-]examination that there was an active PFA order against her, prohibiting her from making contact with [the victim]. Despite her knowledge of the active PFA order against her, [Appellant] admitted to initiating contact with [the victim] by approaching his vehicle, opening the vehicle's doors, and questioning [the victim] about their daughter. [Appellant] also testified on direct[-]examination that she was told by the employees at the TRAC program that her daughter was at the facility but that they were not going to let her see the child. However, she then went on to testify that she approached [the victim's] vehicle after leaving the facility because she "thought her daughter was" in the vehicle. The [trial] court also did not believe her testimony that she was given permission to leave by the

security guard because he clearly testified that she had already left by the time he could process what had transpired.

Furthermore, [Appellant] testified on direct[-]examination that she told a TRAC employee that there was no warrant out for her arrest and, on cross[-]examination, accused [the victim] of filing a false police report against her[. Appellant] also testified that she felt threatened by [the victim] during the altercation. However, she subsequently testified that she did not wait for the police to arrive and instead chose to leave the scene, which is curious given her testimony that [the victim] caused her to fear for her safety because she thought he was reaching for a firearm.

[Appellant's] version of events further failed to account for the injuries that were readily observable by law enforcement shortly after the altercation[,] and [Appellant's version of events was] contradictory to what the security guard [] observed[.] Specifically, [Appellant] testified that she never swung at [the victim]. However, the responding officer observed that [the victim] had an injured hand, the security guard testified that [Appellant] was swinging her arms at [the victim], and [the victim] testified that he was using his hands to try to protect his face. [Appellant's] testimony not only failed to carry "the ring of truth," but in [the trial] court's estimation, it was entirely self-serving and contrived, particularly when considered against the testimony provided by the victim, the responding officer, and the security guard at the scene.

Trial Court Opinion, 9/2/21, 12-16 (record citations and original brackets omitted).

Appellant's argument invites this Court to do nothing more than reassess the credibility of the victim, Appellant, and the other witnesses and reweigh the evidence in an attempt to convince us to reach a result different than the one reached by the trial court as the fact-finder. *See*, *e.g.*, Appellant's Brief at 22 (stating, "believing [the victim's] tenuous and also clearly slanted testimony to find [Appellant] guilty is offensive to one's sense of justice"). We decline Appellant's invitation. *Clay*, 64 A.3d at 1056 (holding

that, the role of an appellate court when addressing a weight claim is to determine if the trial court exceeded its limit of judicial discretion or invaded the providence of the fact-finder).  Based upon the record before us, we discern no abuse of discretion on the part of the trial court in denying Appellant's request for a new trial based upon her claim that the verdict was against the weight of the evidence.  Therefore, Appellant's claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2022