J-S35007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DAVID EDWARD MEGENHARDT | : | |
| Appellant | : | No. 1688 MDA 2024 |

Appeal from the Judgment of Sentence Entered October 3, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000516-2022

BEFORE: OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY OLSON, J.: **FILED NOVEMBER 25, 2025**

Appellant, David Edward Megenhardt, appeals from the October 3, 2024 judgment of sentence entered in the Court of Common Pleas of York County after a jury convicted Appellant of Count 1 – manufacture, delivery, or possession with the intent to manufacture or deliver, a controlled substance (manufactured marijuana) ("PWID"), Count 2 – use of, or possession with intent to use, drug paraphernalia (smoking devices and containers), and Count 3 – persons not to possess, use, manufacture, control, sell, or transfer

firearms.[1]  The trial court sentenced Appellant to an aggregate term of five to

10 years' incarceration.[2]  We affirm.

The trial court summarized the factual and procedural history as follows:

On September 17, 2021, the affiant, Sergeant Justin Seibert, of the West Manchester Police Department, was dispatched to [Appellant's residence].  Upon dispatch to this location, the affiant, as well as another [police] officer detected the odor of raw, unburnt marijuana.  The affiant then observed a large, green, leafy plant growing on the side of an outbuilding in the [backyard] of [Appellant's residence].  Upon closer examination, the affiant was able to identify the plant as marijuana based on his knowledge, experience, and training.  The affiant was able to identify [seven] plants in total.  When the affiant questioned [Appellant] about the existence of marijuana plants, [Appellant] admitted that [the] plants were his and stated the plants were for "he and his roommate's use."  After this interaction, the affiant left the scene and drafted a search warrant for [Appellant's] residence.

Later that evening, the search warrant was signed, and the affiant returned to [Appellant's] residence to execute the search warrant. Prior to executing the search warrant, [Appellant] admitted to the affiant that he "wished to be helpful" and that [the police officers] would find "[drug] paraphernalia in [Appellant's] bedroom, as well as [in his roommate's] bedroom."  [Appellant] also informed the affiant of a secret compartment [where guns were stored] that

_____

[1] 35 P.S. §§ 780-113(a)(30) and (a)(32), as well as 18 Pa.C.S.A. § 6105(a)(1), respectively.

[2] The trial court sentenced Appellant to 16 to 32 months' incarceration on Count 1, six to 12 months' incarceration on Count 2, and five to 10 years' incarceration on Count 3.  The sentences were set to run concurrently to each other, and Appellant was awarded 79 days (July 17, 2024, to October 3, 2024) as credit for time served.  At each count, the trial court ordered Appellant to pay the cost of prosecution and found Appellant to be ineligible for boot camp, the recidivism risk reduction incentive program, and a state drug treatment program.  On Count 3, the trial court found Appellant eligible to participate in a one-year re-entry program.  Sentencing Order, 10/3/24.

was [located] in his [] bathroom closet[.] Upon [a search of Appellant's] home, the affiant recovered the following: Clonex solution, cloning gel, smoking devices, vaporizers, marijuana seeds, grinders, two scales, large tubs with marijuana particles and an odor of marijuana inside, four firearms, several loose rounds of .22 caliber ammunition, and an expired medical marijuana card [issued] to [Appellant]. The affiant then returned to the backyard of [Appellant's residence] and again observed the [seven] marijuana plants with protective fencing around the base of the plants[,] as well as several fake flowers affixed to the plants. The [police] officers took possession of [the marijuana] plants as evidence.

On July 15, 2024, [Appellant's trial counsel] filed a motion to dismiss [the criminal charge filed against Appellant at Count 3 on the ground that Section 6105 was unconstitutional. That same day, the trial court denied Appellant's motion] based on the [*en banc* decision issued by the Court of Common Pleas of York County on October 31, 2023 in ***Commonwealth v. Jamison*** at trial court docket CP-67-CR-4208-2022, wherein the *en banc* panel found that Section 6105 was constitutionally sound.[3]] At the time of the hearing [on Appellant's motion], trial counsel conceded that there were no facts distinguishing [Appellant's case] from the cases [addressed by] the [***Jamison***] decision.

Trial Court Opinion, 3/6/25, at 1-3 (record citations and extraneous capitalization omitted).

On July 17, 2024, a jury convicted Appellant of the aforementioned criminal offenses. On October 3, 2024, the trial court sentenced Appellant as described *supra*. On October 15, 2024, Appellant filed a timely post-sentence

---

[3] ***Commonwealth v. Jamison***, Docket No. CP-67-CR-4208-2022 (York Cnty. C.P. filed Oct. 31, 2023) (unpublished *en banc* opinion); ***see also*** https://cdn.ymaws.com/www.yorkbar.com/resource/resmgr/ylr_local_opinions/court_opinion_-_en_banc.docx.pdf (last visited Nov. 12, 2025).

motion, which the trial court denied on October 24, 2024.[4]  This appeal followed.

Appellant raises the following issues for our review:

[1.]   Whether [Appellant's] conviction [of] PWID [] was against the weight of the evidence presented at trial[?]

[2.]   Whether [Appellant's] conviction [of persons not to possess, use, manufacture, control, sell, or transfer firearms] was against the weight of the evidence presented at trial[?]

[3.]   Whether the trial court committed reversible error for failing to grant [Appellant's] motion to dismiss the charge of [persons not to possess, use, manufacture, control, sell, or transfer firearms?]

Appellant's Brief at 5.[5]

Appellant's first and second issues raise claims that the jury's verdicts were against the weight of the evidence to support his convictions of PWID and persons not to possess a firearm and the trial court abused its discretion in denying his post-sentence motion for a new trial.  *Id.* at 18-25.

Appellate review of a weight claim is a review of the exercise of [the trial court's] discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial [court] had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration

_____

[4] Appellant's judgment of sentence was made final by the denial of his post-sentence motion.

[5] We note that Appellant was directed to file his appellate brief no later than June 16, 2025.  *Per Curiam* Order, 4/16/25.  Counsel filed the appellate brief on July 1, 2025.  While we do not condone counsel's practice of filing an untimely appellate brief, we will, nonetheless, accept the late filing and consider the arguments set forth therein.

to the findings and reasons advanced by the trial [court] when reviewing a trial court's determination that the verdict is[, or is not,] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was[,] or was not[,] against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Horne*, 89 A.3d 277, 285 (Pa. Super. 2014), *citing*

*Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000); *see also*

*Commonwealth v. Rodriguez*, 340 A.3d 334, 349 (Pa. Super. 2025)

(stating, "the function of an appellate court is to review the trial court's

exercise of discretion based upon a review of the record, rather than to

consider *de novo* the underlying question of the weight of the evidence"

(citation omitted)). A trial court abuses its discretion "where the course

pursued represents not merely an error of judgment, but where the judgment

is manifestly unreasonable or where the law is not applied or where the record

shows that the action is a result of partiality, prejudice, bias[,] or ill-will."

*Horne*, 89 A.3d at 285-286 (citation omitted); *see also Commonwealth v.*

*Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (stating, "[t]he term 'discretion' imports

the exercise of judgment, wisdom[,] and skill so as to reach a dispassionate

conclusion within the framework of the law, and is not exercised for the

purpose of giving effect to the will of the [trial court]"). By comparison, "the

role of the trial court is to determine whether, notwithstanding all the

evidence, certain facts are so clearly of greater weight that to ignore them, or

to give them equal weight with all the facts, is to deny justice." *Rodriguez*,

340 A.3d at 349 (citation omitted). For an appellant to prevail on a weight of

the evidence claim, "the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the [trial] court." ***Commonwealth v. Sullivan***, 820 A.2d 795, 806 (Pa. Super. 2003) (citation and internal quotation marks omitted), *appeal denied*, 833 A.2d 143 (Pa. 2003).

Appellant contends the evidence demonstrated that he did not have the requisite knowledge or intent to manufacture marijuana necessary to support his PWID conviction. Appellant's Brief at 19. Appellant testified that he thought the plants he purchased, and that were stipulated to as being marijuana plants, were hemp plants and that it was not illegal to possess hemp plants. *Id.* at 20. Appellant further testified that his roommate planted and cultivated the plants that the police officers seized from his residence. *Id.* Appellant asserts that the trial court abused its discretion in denying his weight claim as to the PWID conviction because it failed to address and consider his uncontradicted testimony that he believed the plants were hemp plants. *Id.* at 20-21. Appellant further asserts that the trial court abused its discretion in denying his weight claim as to the firearm possession conviction based upon a conclusion that the evidence demonstrated "he knowingly failed to sell or transfer the [firearm] to another eligible person who was not a member of his household." *Id.* at 25. Appellant contends that the trial court, in reaching its conclusion, failed to find credible his testimony that he gave the firearm to his accountant several years prior for safe-keeping and that "he had no knowledge [of] how or when the [firearm] was returned to his residence." *Id.* at 23-24.

In denying Appellant's request for a new trial based on claims that the verdicts were against the weight of the evidence, the trial court stated

In the instant case, [Appellant] concedes the sufficiency of the evidence to uphold his convictions, based on his claim being rooted in [a challenge to] the weight of the evidence. [Appellant] alleges, however, that "there was no fingerprinting or [deoxyribonucleic acid ("DNA")] evidence that was ever collected from the firearms that were found." In support of this allegation, [Appellant] argues that: 1) there were clearly three individuals living at the property[ - Appellant, his roommate, and the roommate's caretaker,] 2) three of the firearms could not be traced back to any individual, 3) the shotgun that was traced back to [Appellant] was purchased legally in the 1980's, 4) there was no physical ammunition for that weapon [presented] at trial, only photographs of ammunition, 5) when [police] officers executed the search warrant of [Appellant's] home, they never searched a locked room belonging to [the roommate's caretaker], and that some evidence of the charged crimes could be found in [the caretaker's] room, and 6) that [Appellant] had been traveling back and forth from Florida, leaving the residence in the sole possession of [his roommate and the caretaker], so[,] therefore[,] they had possession of the firearms and not [Appellant]. Despite this, under [Section] 6105(a)(1), once a defendant has been determined to be a person not to possess a firearm, he [or she] has 60 days from the date of the imposition of the disability to sell or transfer that firearm to another eligible person who is not a member of the prohibited person's household. 18 Pa.C.S.A. [§ ]6105(a)(1). In [Appellant's] post-sentence motion, he admits to possessing a shotgun and indicated that even after a conviction that caused him to become a person not to possess a firearm, he knowingly failed to sell or transfer the shotgun to another eligible person who was not a member of his household.

. . .

[Appellant] also alleges, that "as it relates to the PWID charge, the following factors should be given greater weight to support [his] position for a new trial." In support of this allegation, [Appellant] argues that 1) [his roommate and the caretaker] were residing in the property at the time that the marijuana plants were growing, 2) [Appellant] had been traveling back and forth from Florida, leaving the residence in the sole possession of [his

roommate and the caretaker], and 3) no witness actually observed [Appellant] plant, water, grow, or cultivate the marijuana plants found in the backyard of the property.

Despite this, under [Section] 780-113(a)(30), in order for a person to be convicted of possession of a controlled substance with intent to deliver, four elements must be proven beyond a reasonable doubt: (1) the item was in fact a controlled substance, (2) the item was possessed by the defendant, (3) that the defendant was aware of the items presence and that the item in fact was the controlled substance charged, and (4) that the defendant possess[ed] this item or items with the specific intent, or goal of delivering the item to another, or using the item in the manufacture of a controlled substance. 35 P.S. [§ ]780-113(a)(30). There are three ways to determine whether "intent" exists, (1) where defendant engaged in the actual delivery or manufacture of drugs, (2) where defendant expressed his intent to deliver or manufacture, or (3) where circumstantial evidence of defendant's acts and conduct prove intent. The standard is not "witness observation," but rather possession of a controlled substance that is likely meant for distribution. The statute prohibits, "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance[."] 35 P.S. [§ ]780-113(a)(30). The plants discovered at [Appellant's] residence [constituted] manufacturing, as stated in the statute.

Finally, constructive possession can be found for more than one person. Constructive possession is defined as "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control.["] The residence [] belonged to [Appellant], so[,] therefore, his arguments that he was occasionally absent from the property or that someone else could have also had possession would not negate a finding by the jury of constructive possession.

Trial Court Opinion, 10/24/24, at 5-9 (record citations and extraneous capitalization omitted).

As the trial court acknowledged, "[i]t is the function of the jury to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced." *Id.* at 4. As Appellant concedes, the jury's determination of witness credibility was critical to convicting him of committing PWID and violating Section 6105(a)(1). *See* Appellant's Brief at 23-24 (stating, "[t]he determination of whether the trial court committed an abuse of discretion in denying [Appellant's] post-sentence motion for a new trial requires a resolution of the issue of credibility). In denying Appellant's weight claims, the trial court considered the reasonableness of the jury's credibility determinations in light of the evidence presented at trial. Appellant's assertion that the trial court erred in denying his post-sentence motion raising weight of the evidence claims based upon his testimony that he thought the plants were hemp plants, rather than marijuana plants, and that he did not know the firearm, which he claims he "gave" to his accountant several years prior, had found its way back to his residence invites this Court to do nothing more than reassess witness credibility, namely Appellant's credibility, and reweigh the evidence in attempt to convince us to alter the result reached by the jury. As indicated *supra*, the trial court considered the jury's verdicts to be in alignment with the evidence presented at trial. We decline Appellant's invitation to alter these assessments since the jury, while passing on the credibility of the witnesses and weight of the evidence, was free to believe all, part, or none of the evidence. ***Commonwealth v. Dunkins***, 229 A.3d 662, 634 (Pa. Super. 2020), *aff'd*, 263 A.3d 247 (Pa.

2021), *cert. denied*, 142 S.Ct. 1679 (2022). Moreover, we discern no abuse of discretion in the trial court's determination that Appellant's convictions of PWID and Section 6105(a)(1) were against the weight of the evidence.

In his final issue, Appellant claims the trial court erred in denying his motion to dismiss the criminal charge of persons not to possess, use, manufacture, control, sell, or transfer firearms under Section 6105(a)(1). Appellant's Brief at 26-28. In his motion to dismiss, Appellant asserted that he was charged with violating Section 6105(a)(1) based upon his 2013 conviction of Section 780-113(a)(30) of The Controlled Substance, Drug, Device, and Cosmetic Act, which prohibits the manufacture, delivery, or possession with the intent to manufacture or deliver, a controlled substance. Motion to Dismiss, 7/15/24, at ¶¶1-2; *see also* 35 P.S. § 780-113(a)(30). In support of his motion, Appellant argued that Section 6105 violates his rights under the Second Amendment of the United States Constitution because, as applied to Appellant, it would permit a conviction of persons not to possess, use, manufacture, control, sell, or transfer firearms based upon a prior conviction of a nonviolent crime, namely a conviction of Section 780-113(a)(30), and "there is no historical tradition of disarming those convicted of nonviolent felonies[.]"[6] Motion to Dismiss, 7/15/24, at ¶1.

---

[6] The Second Amendment of the United States Constitution states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.
`

Appellant contends that, in denying his motion to dismiss, the trial court erred in relying on an *en banc* decision by the Court of Common Pleas of York County, which held that a conviction of Section 6105 based upon a prior conviction of PWID was constitutionally sound because "the nature of drug distribution as a felony is violent" and the Commonwealth "met its burden in showing historical analogues for the challenged firearms restriction." Appellant's Brief at 27; **see also** N.T., 7/15/24, at 6 (stating, the trial court "will incorporate the **Jamison** opinion in its entirety and deny the motion" to dismiss); **Jamison**, Docket No. CP-67-CR-4208-2022, at 5-6.

Appellant's challenge to the constitutionality of a criminal statute "is a question of law for which our standard of review is *de novo* and our scope of review if plenary." **Commonwealth v. McIntyre**, 333 A.3d 417, 426 (Pa. Super. 2025), *relying on* **Commonwealth v. Omar**, 981 A.2d 179, 185 (Pa. 2009). "As the party challenging the constitutionality of Section 6105, [Appellant] carries the high burden of demonstrating Section 6105 clearly, palpably[,] and plainly violates the Second Amendment of the Constitution of the United States." **McIntyre**, 333 A.3d at 426.

This Court, in **Commonwealth v. Randolph**, 348 A.3d 1248 (Pa. Super. 2025), recently addressed a constitutional challenge to Section 6105 analogous to the case *sub judice*.[7]  In **Randolph**, Randolph was

---

[7] We note that, on September 1, 2025, a petition for allowance of appeal was filed with our Supreme Court at Supreme Court docket number 217 MAL 2025 and, as of the date of this decision, the petition remains pending.

convicted, as was Appellant in the case *sub judice*, of violating Section 6501(a)(1) based upon a prior conviction of an offense under The Controlled Substance, Drug, Device, and Cosmetic Act. ***Randolph***, 343 A.3d at 1251. The ***Randolph*** Court summarized the historical progress of federal cases that considered constitutional challenges implicating the Second Amendment, and we incorporate that summary herein. ***Id.*** at 1251-1254, *discussing* ***Dist. of Columbia v. Heller***, 554 U.S. 570 (2008), ***McDonald v. City of Chicago***, 561 U.S. 742 (2010), ***New York State Rifle & Pistol Assoc. v. Bruen***, 597 U.S. 1 (2022), and ***United States v. Rahimi***, 602 U.S. 680 (2024).

The United States Supreme Court, in ***Bruen***, ***supra***, articulated a two-part test to be applied when a defendant challenges the constitutionality of a criminal statute on Second Amendment grounds. That two-part test is as follows:

> When the Second Amendment's plain text covers an individual's conduct, the [United States] Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment[']s "unqualified command."

***Bruen***, 597 U.S. at 24; ***see also Randolph***, 343 A.3d at 1252.

Thus, pursuant to ***Bruen***, when analyzing the constitutionality of a statute based on Second Amendment grounds, the first prong of the test "is to consider whether the plain text of the Second Amendment covers the individual's conduct." ***Randolph***, 343 A.3d at 1255, *citing* ***Bruen***, 597 U.S.

at 24. If the defendant is one of "the people" protected by the Second Amendment, then a court proceeds to the second prong of the test, which requires an examination as to whether, or not, the Commonwealth justified the criminal statute "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." **Randolph**, 343 A.3d at 1256, *citing* **Bruen**, 597 U.S. at 24.

In **Randolph**, this Court, relying on **Commonwealth v. Farmers**, 329 A.3d 449 (Pa. Super. 2024), *allocatur granted*, 44 MAL 2025, 2025 WL 1873446 (Pa. filed Jul. 8, 2025) (slip copy), held that a defendant, even one convicted of a prior criminal felony under The Controlled Substance, Drug, Device, and Cosmetic Act, was encompassed within the term "the people" for purpose of being afforded rights and protections under the Second Amendment.[8] **Randolph**, 343 A.3d at 1256. Therefore, we are bound to find that Appellant, who was convicted of a prior criminal offense under The Controlled Substance, Drug, Device, and Cosmetic Act, is encompassed within

_____

[8] In so holding, the **Randolph** Court noted that this Court's decision in **McIntyre**, *supra*, which held that convicted violent offenders were not included within the term "the people" and, therefore, were not afforded protections under the Second Amendment, was in contradiction with this Court's earlier decision in **Farmer**, *supra*, which, as discussed *supra*, held that persons convicted of a felony were encompassed within the term "the people." **Randolph**, 343 A.3d at 1256; **see also McIntyre**, 333 A.3d. at 430; **Farmer**, 329 A.3d at 455. The **Randolph** Court found, and we must do the same, that it was bound by the decision in **McIntyre** only to the extent that it did not contradict **Farmer** because this Court in **McIntyre** "lacked the ability to overturn an earlier precedent from this Court." **Randolph**, 343 A.3d at 1256 n.4.

the term "the people" for purpose of being afforded rights and protections under the Second Amendment. ***Id.***

In analyzing the second prong of the ***Bruen*** test, the ***Randolph*** Court held that

> the prohibition imposed on [Randolph] by [Section] 6105 "is consistent with the Nation's historical tradition of firearm regulation." ***Bruen***, 597 U.S. at 24[.] As noted, the ***Rahimi*** Court stated that "an individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." ***Rahimi***, 602 U.S. at 702[.] Here, the trial court specifically found that [Randolph's] prior convictions for PWID placed him in the category of persons who would pose a credible threat to others. This was supported by the Commonwealth's argument at the hearing.
>
> Our position is consistent with the [United States] Supreme Court's repeated admonition that ***Heller*** and its progeny "should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." ***Heller***, 554 U.S. at 626[.] Moreover, as numerous courts have recounted in their opinions, categories of people have historically been disarmed despite not having actually engaged in violent behavior. ***See, e.g.***, [***United States v. Jackson***, 110 F.4th 1120, 1126-1127 (8th Cir. 2024)] (discussing colonial regulations that prohibited certain classes of persons from owning firearms, such as those who fail to swear a loyalty oath)[, *cert. denied*, 145 S.Ct. 2708 (2025)]; ***see also*** [***Commonwealth v. Jenkins***, 328 A.3d 1076, 1092 (Pa. Super. 2024)] (highlighting firearms prohibitions relating to sureties and vagrants)[, *allocatur granted*, 343 A.3d 181 (Pa. 2025)].
>
> Furthermore, as we astutely observed in ***Farmer***:
>
>> From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others. The ***Rahimi*** Court cited surety laws, whereby a person suspected of future misbehavior, including misuse of firearms, was required to post a bond or face jailtime. Those who posted bonds would forfeit the bond in the event of future misbehavior. "Going armed" laws "prohibited riding or

- 14 -

> going armed, with dangerous or unusual weapons, to terrify the good people of the land." Punishment included imprisonment and forfeiture of weaponry.
>
> Noteworthy here is the lesson the **Rahimi** Court drew from the surety and going armed laws. "Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." . . .

**Farmer**, 329 A.3d at 454[.]

> Hence, America's history of prohibiting certain classes of people from having firearms, particularly those that could pose a higher risk of danger to society, provides a "historical analogue" required by **Bruen** for [Section] 6105, even if it is not a "historical twin." **See Bruen**, 597 U.S. at 30[.] Additionally, our holding aligns with the federal court cases [] that have addressed this nearly identical issue and concluded that the dangerous combination of drugs and firearms permits the government's regulation.

**Randolph**, 343 A.3d at 1258-1259 (original brackets omitted).

Similar to the trial court in **Randolph**, which found that persons convicted of PWID posed a credible threat to others, the trial court in the case *sub judice*, relying on the decision in **Jamison**, **supra**, reiterated that persons convicted of PWID present a danger to others because "the nature of drug distribution as a felony is violent, both in the inherent dangerousness of the drugs on the streets today and in the strong connection between drug distribution and the violent use of firearms." **Jamison**, Docket No. CP-67-CR-4208-2022, at 5-6; **see also** N.T., 7/15/24, at 6 (basing its decision to deny Appellant's motion to dismiss on the **Jamison** decision). The Commonwealth, in response to Appellant's motion to dismiss, similarly relied on the **Jamison** decision for the proposition that persons convicted of PWID

present a danger to others because the underlying felony is inherently dangerous. N.T., 7/15/24, at 5 (stating, "[w]e would ask the [trial court] to rely on the [**Jamison** decision]). Therefore, we find that the Commonwealth has satisfied it burden under the second prong of the **Bruen** test. **See Randolph**, 343 A.3d at 1258-1259. As such, we find that Appellant's constitutional challenge to Section 6105 fails.[9]

Judgment of sentence affirmed.

_____

[9] To the extent that Appellant asserts that Article I, Section 21 of "the Pennsylvania Constitution provides greater protections for the right to bear arms than the Second Amendment [of the United States Constitution], and independently prohibits the application of Section 6105 to [Appellant,]" we find this argument to be of no avail. Pennsylvania "courts have repeatedly treated Article I, Section 21 [of the Pennsylvania Constitution] as not providing any greater restriction [or protections] on government firearms regulations than the Second Amendment." **Commonwealth v. Mead**, 326 A.3d 1006, 1015 (Pa. Super. 2024) (stating, Article I, Section 21 of the Pennsylvania Constitution "does not provide greater protection of the right to bear arms than the Second Amendment"), *appeal denied*, 343 A.3d 985 (Pa. 2025); **see also Commonwealth v. Williams**, 341 A.3d 144 (Pa. Super. 2025); **Commonwealth v. Nives-Crespo**, 321 A.3d 965, 2024 WL 2239582, *13 (Pa. Super. filed May 17, 2024) (unpublished memorandum) (holding that, both the Second Amendment and Article I, Section 21 of the Pennsylvania Constitution offer the same protections); PA. CONST. art. I, § 21 (stating, "[t]he right of the citizens to bear arms in defence of themselves and the State shall not be questioned").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/25/2025</u>